**DAVID H. ANGELI,** OSB No. 020244
david@angelilaw.com
**KEVIN M. SALI**, OSB. No. 044065
kevin@angelilaw.com
**BENJAMIN N. SOUEDE**, OSB No. 081775
benjamin@angelilaw.com.com
Angeli Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR  97204
Telephone:  (503) 954-2232
Facsimile:   (503) 227-0880

**D. ZACHARY HOSTETTER**, OSB No. 100541
**REBECCA J. KNAPP**, OSB No. 012754
 hklaw@eoni.com
HOSTETTER KNAPP, LLP
Attorneys at Law
203 E. Main St./P. O. Box 400
Enterprise, OR 97828
Tel:  (541) 426-4584
Fax: (541) 426-3281

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| BRUCE HAMPTON, an individual, VENESE HAMPTON, an individual, and BRUCE HAMPTON, as trustee of the Bruce & Venese Hampton Charitable Trust I and the Bruce & Venese Hampton Charitable Trust II, | Case No.: 2:12-CV-00470-SU |
| | **AMENDED COMPLAINT** |
| Plaintiffs, | (42 U.S.C. § 1983; Intentional Infliction of Emotional Distress; Intentional Interference with Economic Relations; Defamation; Invasion of Privacy; Wrongful Initiation of Civil Proceedings; RICO Violations; ORICO Violations; Negligence) |
| vs. | |
| *[continued]* | **DEMAND FOR JURY TRIAL** |

PAGE 1 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

FRED STEEN, individually and as Sheriff
of Wallowa County; WALLOWA
COUNTY SHERIFF'S OFFICE, a
municipal subdivision of the State of
Oregon; and  WALLOWA COUNTY, a
municipal subdivision of the State of
Oregon, and LLOYD TRACKWELL, JR.,
aka Lloyd R. Trackwell, aka Lloyd Ray
Trackwell, individually and as an agent and
informant for Wallowa County and
Wallowa County Sheriff's Office,

                Defendants.

---

       Plaintiff Bruce Hampton (both individually and in his capacity as trustee of the Bruce &

Venese Hampton Charitable Trust I and the Bruce & Venese Hampton Charitable Trust II) and

plaintiff Venese Hampton (collectively "plaintiffs") file this Complaint and Jury Demand against

defendants Fred Steen ("Steen"), Wallowa County Sheriff's Office ("WCSO"), Wallowa

County, Oregon, and Lloyd Trackwell, Jr., aka Lloyd R. Trackwell, aka Lloyd Ray Trackwell

("Trackwell") (together, "defendants") upon personal knowledge as to their acts and upon

information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION AND VENUE

       1.     Steen is an individual residing in Wallowa County, Oregon.  He is, and at all

material times was, the elected Sheriff of Wallowa County, Oregon, acting under color of state

law with respect to all conduct set forth herein.  Unless otherwise stated herein, Steen is sued in

his personal and official capacities and all references herein are intended to refer to him in both

capacities.

       2.     WCSO is a subdivision of Wallowa County, which is a municipal corporation of

the State of Oregon, a public body as defined in ORS 30.260(4)(a).  At all material times, Steen

was acting as an employee and agent of WCSO, and of Wallowa County, and in the course and scope of his employment and agency.   Wallowa County is subject to suit under ORS 30.265 (1) and ORS 203.010 (1) for its torts and those of its officers, employees and agents acting within the scope of their employment or duties.

3.      Trackwell is an individual who resides in Wallowa County, Oregon.  Trackwell is, and was, at all material times acting as an agent of Steen, WCSO, and Wallowa County, and acting under color of state law with respect to all conduct set forth herein.  Unless otherwise stated herein, Trackwell is sued in his personal and official capacities and all references herein are intended to refer to him in both capacities.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. §1343(a)(3), and 28 U.S.C. § 1367, and venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and, because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District, 28 U.S.C. § 1391(b)(2).  The Pendleton Division is the proper division because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in Wallowa County, Oregon.

5.      Defendants Wallowa County and WCSO, its elected officials named herein, its agents (including Trackwell), and other persons named herein, determined to harass, defame, discredit, coerce, extort, stalk, humiliate, and injure plaintiffs, and to wrongfully interfere with and deprive plaintiffs of their business and contractual relations through deception and fraud. The reasons for that determination include to retaliate against plaintiffs for their efforts to defend themselves in court against attempts to collect a debt allegedly owed by plaintiffs to American Bank of Missouri ("ABM") and to deprive plaintiffs of, among other things, their interests in property and liberty, including their economic relationships, their real property, their reputation,

and their ability to sell their real property interests for full value.

## FACTUAL BACKGROUND

6.     In 2005, Judith Trackwell purchased a ranch in Imnaha (Wallowa County), Oregon (hereinafter referred to as the "Imnaha Ranch") from Donald Hubbard and Dorothy Hubbard ("the Hubbards").  Judith Trackwell was represented in that transaction by Russ Rounavarra (real estate broker) and by the General Land Office. The transaction was closed through Wallowa Title Company (as escrow agent).

7.     Upon closing the transaction, Judith Trackwell designated her son, Lloyd Trackwell, as her ranch manager. From that time to the present, Trackwell has resided on the Imnaha Ranch and has acted in that capacity as the agent of Lloyd Trackwell, Sr. (his father), and of Judith Trackwell (his mother).

8.     On September 11, 2006, Judith Trackwell filed a complaint in the United States District Court for the District of Oregon. The lawsuit was captioned *Trackwell v. Hubbard et. al*, USDC Case No. 06-CV-90-ST (hereinafter "Case No.06-CV-90-ST"). The lawsuit included as defendants (among others) Marilyn Suarez (aka Marilyn Preston), and AC3, Inc., dba Wallowa Title Company (" Wallowa Title Company") and alleged, among other things, that Marilyn Preston and Wallowa Title Company had engaged in a conspiracy to defraud Judith Trackwell with regard to the Imnaha Ranch transaction.  Trackwell acted as agent for Judith Trackwell both in the acquisition of the Imnaha Ranch and in Case No. 06-CV-90-ST.  Mary Wickenkamp ("Wickenkamp") acted as agent for Judith Trackwell in Case No. 06-CV-90-ST.

9.     In 2006, Steen was a party to a lawsuit in which he filed claims against Wallowa Title Company.  The lawsuit was captioned *AC3, Inc. v. Steen*, Wallowa County Circuit Court Case No. 05-0312527 ("Case No. 05-0312527").

10.    In 2007, Trackwell, Steen, WCSO, Judith Trackwell, Wickenkamp, and Lloyd Trackwell, Sr. (hereinafter jointly called "associated persons"), associated together for the purpose of:

      a.    salvaging and retaining the grazing rights on United States Forest Service ("USFS") lands associated with the Imnaha Ranch;

      b.    defending administrative actions by the USFS to terminate said grazing rights;

      c.    operating the Imnaha Ranch and marketing and selling livestock and property interests related thereto;

      d.    discrediting, defaming, coercing, and injuring the Hubbards, Marilyn Suarez, Wallowa Title Company, plaintiffs, the family members of all, and others;

      e.    causing economic injury to Marilyn Suarez, Wallowa Title Company, plaintiffs, and others in order to cause victims of the associated persons to pay money they do not owe, and/or to cause victims of the associated persons to abandon attempts to collect money that the associated persons, or one of them, owed to their victims; and

      f.    as set out more specifically in paragraph 5 above.

11.    In 2008, Steen and WCSO filed a false report with the Enforcement Section of the Oregon Department of Consumer and Business Services ("ODCBS") against Wallowa Title Company, in which report Steen falsely alleged, among other things, that Marilyn Suarez and Wallowa Title Company conspired with Bruce Hampton, Venese Hampton, and others to violate "ORS 164.170 (Money Laundering) Title 18 USC 1956 (Money Laundering) Title 26 USC 7207

(Tax Fraud)".

12.     From time to time from 2008 to the present, Trackwell, Steen, WCSO, and/or Judith Trackwell, filed false reports with ODCBS, the Oregon State Police, the Oregon Department of Justice (ODOJ), the Internal Revenue Service (IRS), the Federal Bureau of Investigation (FBI), and the Financial Crimes Enforcement Network of the United States Department of the Treasury, alleging, among other things, that Venese Hampton and Bruce Hampton had conspired with Marilyn Suarez, Wallowa Title Company, and others to commit the crimes of money laundering, theft, tax evasion, and fraud.

13.     In August 2007, Trackwell sought and procured an agreement to serve as an agent for the American Bank of Missouri ("ABM"), a Missouri banking corporation, in seeking collection of a debt allegedly owed by Venese Hampton and Bruce Hampton to ABM.  ABM agreed to pay  Trackwell 45% of any monies Trackwell collected from either plaintiff on the alleged debt.  The associated persons conspired to collect the debt through unlawful debt collection practices, defamation, harassment, stalking, humiliation, coercion and extortion. The associated persons developed their conspiracy and plan against Venese Hampton and Bruce Hampton in 2007.  Neither plaintiff was ever indebted to ABM.  Trackwell was terminated by ABM as agent of ABM effective August 10, 2010.

14.     Trackwell attempted to collect the alleged debt to ABM from Venese Hampton and Bruce Hampton  by taking one or more of the following actions in the state of Oregon:

        a.      By filing an Amended Complaint against both plaintiffs in which Trackwell was a named plaintiff along with ABM in the case of *American Bank of Missouri, et al. v. John Doe, et al.*, Wallowa County Circuit Court Case No. 08-01-12961, in which action Trackwell alleged claims against

both plaintiffs for, among other things, breach of contract, breach of the covenant of good faith and fair dealing, and fraud. Trackwell's action terminated in favor of Venese Hampton and Bruce Hampton;

b.     By attempting to interfere with and otherwise impede a real property transaction between both plaintiffs and a potential purchaser(s), thereby violating, inter alia, 15 U.S.C. § 1692c(b);

c.     By contacting plaintiffs' pastor and other members of plaintiffs' church concerning the alleged debt owed by plaintiffs to ABM, thereby violating 15 U.S.C. § 1692c(b);

d.     By falsely asserting that each plaintiff had committed a criminal act;

e.     By falsely threatening attachment of plaintiffs' property, thereby violating 15 U.S.C. § 1692e(4);

f.     By making false statements to third parties concerning plaintiffs' financial obligations and conditions, thereby violating 15 U.S.C. § 1692e(8) and 1692e(10);

g.     By making false representations about the character and amount of the debt allegedly owed by Venese Hampton and Bruce Hampton, thereby violating 15 U.S.C. § 1692e(2);

h.     By using deceptive means to obtain information concerning each plaintiff, thereby violating 15 U.S.C. § 1692e(10);

i.     By threatening to communicate false credit information to others, thereby violating 15 U.S.C. § 1692e(8);

j.     By violating 15 U.S.C. § 1692g(a);

k.     By violating 15 U.S.C. § 1692g(a)(3);

l.     By violating 15 U.S.C. § 1692g(a)(4);

m.     By filing false complaints against each plaintiff with the Oregon Department of Justice and with other law enforcement agencies, thereby violating, inter alia, 15 U.S.C. § 1692c(b); and

n.     By stalking Venese Hampton and Bruce Hampton and members of their family.

15.     Trackwell was not registered with the Oregon Department of Consumer and Business Services as required by ORS 697.015 at the time that he took the collection actions described above.

16.     From July 1, 2009, to the present, Steen, WCSO, and Wallowa County have conspired with and assisted Trackwell in his efforts to collect the alleged debt from each plaintiff through wrongful means, as set out herein, and have further conspired with and assisted Trackwell in his campaign and attempts to coerce and extort Venese Hampton and Bruce Hampton to pay the "debt" as alleged below.  In doing so, Steen has acted both to benefit himself individually and in his position and capacity as the Sheriff of Wallowa County.

17.     From July 1, 2009, to the present, Judith Trackwell and Wickenkamp have conspired with and assisted Trackwell in his efforts to collect the alleged debt from Venese Hampton and Bruce Hampton as alleged above, and have further conspired with and assisted Trackwell and Steen in their illegal campaign to injure each plaintiff as alleged below.

18.     From 2011 to the present, Paul Castilleja (an elected member of the Board of Commissioners of Wallowa County) joined in the plans, schemes, actions and conspiracy of the associated persons and became one of the associated persons.  As such, Paul Castilleja has

conspired with and assisted Trackwell in his efforts to collect the alleged debt from each plaintiff, and has further conspired with and assisted Trackwell and Steen in their illegal campaign to injure Venese Hampton and Bruce Hampton as alleged below.

19.    Donovan Shaw ("Shaw") is a deputy of Steen and employed by WCSO.  Shaw frequently acts as the courtroom deputy for the Wallowa County Circuit Court.  Shaw's duties as courtroom deputy and as an employee of WCSO include protecting the lives and welfare of the judges, staff, jurors, and the public, and maintaining the orderly administration of justice.

20.    Beginning on or about January 2011, in furtherance of defendants' scheme to harass, discredit, defame, coerce, extract, stalk, humiliate, and injure Venese Hampton and Bruce Hampton, Shaw joined in the plans, schemes, actions and conspiracy of the associated persons and became one of the associated persons.  As such, Shaw has conspired with and assisted defendants Trackwell and Steen in their efforts to collect the alleged debt from each plaintiff, and has further conspired with and assisted Trackwell and Steen in their illegal campaign to injure each plaintiff as alleged below.

21.    On September 15, 2010, Trackwell was a passenger in a vehicle owned by Gregory Wieck and Claudette Wieck (hereinafter "the Wiecks") and driven by Gregory Wieck. Pursuant to Trackwell's instructions, Gregory Wieck drove slowly by plaintiffs' residence numerous times in furtherance of a scheme developed by Trackwell, Steen, WCSO, and the Wiecks, to "lure" plaintiffs out of their home and to attempt to discredit, defame and injure plaintiffs for purposes of a hearing scheduled in Wallowa County Circuit Court for the next day (September 16, 2010). The hearing was to determine whether or not the Circuit Court's earlier issuance of a Temporary Stalking Order against Trackwell should be made permanent.

22.    During the course of attempting to lure plaintiffs from their home, Trackwell and

the Wiecks recorded the events (both visually and audibly). While keeping Steen advised of the course of events as they unfolded by cell phone, Trackwell advised defendant Steen that "there may be gunfire." All the while Steen had contributed his personally owned video camera for use by Trackwell and the Wiecks in their attempt to "lure" plaintiffs out of their home and to defame and discredit plaintiffs.  Steen and Wiecks encouraged and supported Trackwell in his stalking activities described herein.

23.     In 2007, as part of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure Venese Hampton and Bruce Hampton, Trackwell wrongfully and intentionally interfered with each plaintiff's contractual and business relationship with the United States Department of Agriculture ("USDA"), the United States Natural Resource Conservation Service ("NRCS"), and the Oregon Watershed Enhancement Board ("OWEB").  Defendants' motive and purpose in doing so was to harm Venese Hampton and Bruce Hampton.  As a result of this interference, USDA, NRCS, and OWEB terminated their contractual and business relationships with both Venese Hampton and Bruce Hampton.

24.     On and after July 1, 2009, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell wrongfully and intentionally interfered with each plaintiff's contractual relationship with Junior Lewis and Rose Lewis (hereinafter the "Lewises," from whom plaintiffs had purchased a portion of the "Pocket Ranch" and to whom plaintiffs were making annual payments under their purchase agreement with the Lewises) by defaming each plaintiff.  Defendants' motive and purpose in doing so was to harm Venese Hampton and Bruce Hampton.  As a result of defendant's interference, the Lewises terminated their contractual relationship with Venese Hampton and with Bruce Hampton, and sued each plaintiff to foreclose the Lewises' security interest in the Pocket Ranch.

25.     On and after July 1, 2009, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell intentionally interfered with each plaintiff's contractual and business relationship with The Nature Conservancy, with which each plaintiff had an economic relationship, and with which each plaintiff had entered into an agreement for the purchase and sale of the Pocket Ranch and/or purchase and sale of a conservation easement on the Pocket Ranch, by defaming each plaintiff. Defendants' motive and purpose in doing so was to harm Venese Hampton and Bruce Hampton. As a result of Trackwell's interference, The Nature Conservancy terminated its contractual and business relationships with each plaintiff.

26.     In August 2009, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, stalk, and injure each plaintiff, Trackwell contacted the pastor of plaintiffs' church (Joseph Baptist Church) and other persons attending plaintiffs' church, and falsely accused Venese Hampton and Bruce Hampton of failing to pay their debts and of tax evasion and fraud, and called both plaintiffs "liars."

27.     In 2010, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell contacted plaintiffs' friend and former banker (then recently retired) Richard Wood, and falsely accused each plaintiff of failing to pay each plaintiff's debts, and of commission of crimes. Trackwell asserted to Mr. Wood that the loan made to plaintiffs by Community Bank (for which Mr. Wood was the loan officer) was illegal and that Mr. Wood would be the "fall guy."

28.     On and after July 1, 2009, and to the present, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell intentionally interfered with each plaintiff's business relationship with Marilyn Suarez and with

Wallowa Title Company, by falsely asserting that each plaintiff had failed to pay their respective debts, that each plaintiff had committed state and federal crimes, and that each plaintiff was under investigation by WCSO, by Trackwell as an agent and informant for WCSO, and by the FBI, IRS, and ODOJ.

29.    On or after July 1, 2009, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell intentionally interfered with each plaintiff's business relationship with First American Title Company by falsely asserting that each plaintiff had failed to pay their respective debts, that each plaintiff had committed state and federal crimes, and that each plaintiff was under investigation by WCSO, by Trackwell as an agent and informant for the WCSO, and by the FBI, IRS, and ODOJ.

30.    On or after July 1, 2009, and to the present, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell intentionally interfered with each plaintiff's business relationship with Russ Ruonavaara and the General Land Office in Joseph, Oregon, by falsely asserting that each plaintiff  had failed to pay their respective debts, that each plaintiff had committed state and federal crimes, and that each plaintiff was under investigation by the WCSO, by Trackwell as an agent and informant for the WCSO, and by the FBI and IRS.  As a result of defendant's interference, the business relationship between Mr. Rounavaara and each plaintiff was terminated.

31.    In 2011 and to the present, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure each plaintiff, Trackwell intentionally interfered with each plaintiff's business relationship with Bill Bushlen and the General Land Office in Joseph, Oregon, by falsely asserting that each plaintiff had failed to pay their respective debts, that each plaintiff had committed state and federal crimes, that each plaintiff was under

investigation by the WCSO, and by Trackwell as an agent and informant for the WCSO, and by

the FBI and ODOJ, and by threatening to file a lawsuit against Bill Bushlen as a result of Bill

Bushlen and/or General Land Office listing plaintiffs' house for sale.

32.     On or after July 1, 2009, in furtherance of defendants' scheme to discredit,

defame, coerce, humiliate, extort, and injure each plaintiff, Trackwell intentionally interfered

with each plaintiff's business relationship with Community Bank, by falsely asserting that each

plaintiff had failed to pay their respective debts, that each plaintiff had committed state and

federal crimes, and that each plaintiff was under investigation by the WCSO, and by Trackwell

as an agent and informant for the WCSO, and by the FBI and ODOJ.

33.     In 2007, Steen and WCSO instructed Trackwell when Trackwell was engaged as

an agent and informant for WCSO to report to Steen and WCSO "everything that squeaks or

moves" about Venese Hampton and/or Bruce Hampton.

34.     Sometime after 2007 and continuing to the present, Trackwell, Steen and Judith

Trackwell, along with Lloyd Trackwell Sr., have associated in raising livestock on the Imnaha

Ranch.

35.     On December 21, 2011, Steen and Trackwell caused cattle to be transported from

the Imnaha Ranch and across state lines without a brand inspection in violation of ORS

604.071(transporting cattle across state lines without brand inspection).  Trackwell was

convicted of violating ORS 604.071 on February 29, 2012 in *State of Oregon v. Trackwell*,

Wallowa County Circuit Court Case No. 12V6840.

36.     The associated persons operated as a single enterprise that constituted an

"association-in-fact" enterprise within the meaning of 18 U.S.C. §1961(4) ("the RICO

enterprise") and of ORS 166.715(2) (the "ORICO Enterprise") (collectively, the "Enterprise").

37.     On September 1, 2008, Trackwell initiated and/or prosecuted a civil proceeding against Venese Hampton and against Bruce Hampton in *American Bank of Missouri v. Doe*, Wallowa County Circuit Court Case No. 08-01-12961.  That case terminated on January 24, 2011, in favor of Venese Hampton and in favor of Bruce Hampton.  Trackwell had no probable cause to initiate and prosecute Case No. 08-01-12961, and he did so with malicious intent against Venese Hampton and against Bruce Hampton.

38.     On April 15, 2011, Trackwell initiated and prosecuted a civil proceeding against Venese Hampton and against Bruce Hampton in the case of *Trackwell v. Hampton*, United States District Court Case No. 3:11-CV463MO (hereinafter "Case No. 3:11-CV-463MO").  The case terminated in favor of Venese Hampton and in favor of Bruce Hampton.  Trackwell and Steen had no probable cause to initiate or prosecute Case No. 3-11-CV-463MO, and they did so with malicious intent against Venese Hampton and against Bruce Hampton.

39.     On May 13, 2011, Trackwell and Steen initiated and/or prosecuted a civil proceeding against Venese Hampton and against Bruce Hampton in the case of *Trackwell v. Hostetter*, USDC Case No. 3:11-CV-00627-MO (hereinafter "Case No. 11-CV-00627-MO").  Case No. 11-CV-00627-MO terminated in favor Venese Hampton and in favor of Bruce Hampton.  Steen and Trackwell had no probable cause to initiate and prosecute Case No. 11-CV-00627-MO, and they did so with malicious intent against Venese Hampton and against Bruce Hampton.

40.     Trackwell, Steen and Paul Castilleja have met and have continued to meet regularly in the office of WCSO, Wallowa County Justice Center, 104 W. Greenwood Street, Enterprise, Oregon, to coordinate their plans in furthering their Enterprise and their conspiracy to discredit, defame, coerce, extort, and injure Venese Hampton and Bruce Hampton.

41.     On or about September 2008, in furtherance of the Enterprise, Judith Trackwell and/or Trackwell knowingly caused a negotiable instrument, upon which the endorsement of Lorentz Trucking and Donald Lorenz had been forged, to be negotiated.  Lloyd Trackwell, Sr. and Judith Trackwell profited from the transaction by causing the proceeds of the forged instrument to be applied to an outstanding loan against the Imnaha Ranch.  The actions described herein violated ORS 165.013 (forgery in the first degree); ORS 164.057 (aggravated theft in the first degree); and 18 U.S.C. §1344 (bank fraud).

42.     On December 29, 2008, in furtherance of the Enterprise, Judith Trackwell signed and filed a falsely sworn affidavit in Hood River County Circuit Court in which she falsely swore that she had a pending deal to sell the Imnaha Ranch to a nonprofit corporation called Western Horizons Conservation Society ("Western Horizons"), that Mary Dorrenbach (aka Wickenkamp) was the principal of Western Horizons with whom she was dealing, that an escrow had been opened with First American Title Company, and that attorney Jeffrey Fraizier had interfered with the deal and caused its termination. Judith Trackwell knew that Western Horizons was a sham corporation created by defendants for fraudulent purposes, that it had no resources to purchase anything, that the person represented as "Mary Dorrenbach" was actually Mary Wickenkamp, and that there was no real "deal" with which to interfere, and that contacts from Jeffrey Fraizier were of no consequence.  Judith Trackwell's actions described herein violated ORS 162.075 (false swearing) and ORS 162.065 (perjury).

43.     On December 29, 2008, Wickenkamp, in furtherance of the Enterprise, signed and filed a falsely sworn affidavit that she was "Mary Dorrenbach," that she had made an offer of $9,000,000.00 on behalf of Western Horizons Conservation Society to purchase the Imnaha Ranch, and that calls from attorney Jeffrey Fraizier to her had caused her to terminate the deal.

Wickenkamp knew that Western Horizons Conservation Society was a sham corporation created by defendants for fraudulent purposes and that there was no real "deal" with which to interfere, and that contacts from Jeffrey Frazier were of no consequence.  Wickenkamp's actions described herein violated ORS 162.075 (false swearing) and ORS 162.065 (perjury).

44.    On December 29, 2008, Trackwell, in furtherance of the Enterprise, signed and filed a falsely sworn affidavit in Hood River County Circuit Court in which he falsely swore that the Affidavit of Judith Trackwell was accurate in its assertions that Mary Dorrenbach of Western Horizons Conservation Society, a nonprofit corporation, had made an offer of $9,000,000.00 to purchase the Imnaha Ranch.  Trackwell knew that Western Horizons Conservation Society was a sham corporation created by defendants for fraudulent purposes, that the person represented as "Mary Dorrenbach" was actually Mary Wickenkamp, and that there was no "deal' with which to interfere.  Trackwell's actions described herein violated ORS 162.075 (false swearing) and ORS 162.065 (perjury).

45.    On October 18, 2008, Trackwell and Judith Trackwell, with the assistance of Lloyd Trackwell, Sr., and Wickenkamp, and in furtherance of the Enterprise, submitted a false application to OWEB in which they falsely asserted that Western Horizons Conservation Society, a sham nonprofit corporation (created by defendants for fraudulent purposes), was willing to purchase the Imnaha Ranch for $9,000,000.00.  They knew when making the application to OWEB that Western Horizons Conservation Society was a sham corporation created by them for fraudulent purposes, that the person representing herself to be "Mary Dorrenbach" was actually Mary Wickenkamp, and that the "deal" to purchase the Imnaha Ranch did not exist.  The actions as described herein violated ORS 162.085 (unsworn falsification) and 18 U.S.C. §1505 (obstruction of administrative proceedings).

PAGE 16 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

46.    By written communication dated March 19, 2010, Lloyd Trackwell, Sr. and Judith Trackwell, in furtherance of the Enterprise, corruptly endeavored to influence a proceeding before the USFS concerning grazing rights on USFS lands associated with the Imnaha Ranch, by falsely representing that their daughter, Mary Trackwell (whom they alleged to be a "retired attorney"), was willing and able to serve as ranch manager of the Imnaha Ranch in replacement of their son, Lloyd Trackwell.  (Lloyd Trackwell, Sr. and Judith Trackwell had no such daughter.)  The actions described herein violated 18 U.S.C. 1505 (obstruction of administrative proceedings).

47.    On December 29, 2008, in the case of *American Bank of Missouri v. Doe*, Wallowa County Circuit Court Case No. 08-01-12691 (hereinafter "Case No. 08-01-12961"), and in furtherance of the Enterprise, Trackwell falsely testified that he was then a resident of Nebraska, that he travels to Nebraska approximately twice a month by flying from Boise, Idaho, and that he drives to Nebraska from Imnaha, Oregon once a month.

48.    Trackwell's actions set out above violated ORS 162.065 (perjury).

49.    On December 29, 2008, in connection with Case No. 08-01-12961, and in furtherance of the Enterprise, Trackwell falsely testified that he had not communicated with Mary Wickenkamp "in years."

50.    Trackwell's actions set above violated ORS 162.065 (perjury).

51.    On July 6, 2011, Trackwell filed a fraudulent petition in the case of *In Re Trackwell*, United States Bankruptcy Court for the District of Nebraska Case No. 11-41830 (hereinafter "Case No. 11-41830") and in *In Re Trackwell*, United States Bankruptcy Court for the District of Oregon, Case No. 11-38050 (hereinafter "Case No. 11-38050").

52.    Trackwell's actions set out above violated 11 USC § 157.

**First Predicate Act (ORICO)**

53.     On August 30, 2010, in *Hampton v. Trackwell*, Wallowa County Circuit Court

Case No. 10-08-13395 (civil stalking) (hereinafter "Case No. 10-08-13395") and in furtherance

of the Enterprise, Trackwell threatened Bill Bushlen, whom Trackwell believed may be called to

testify as a witness in Case No.10-08-13395, stating that if Bill Bushlen did not testify in the

manner in which Trackwell wanted him to testify (which was false), Trackwell would bring to

court taped recordings of Trackwell's conversations with Bill Bushlen (which recordings did not

exist), that Trackwell would subpoena Mr. Bushlen's wife, and that Trackwell would subpoena

all of Bill Bushlen's files.

54.     Trackwell's actions as set out above violate ORS 162.285 (tampering with a

witness) and ORS 162.235 (obstruction of judicial administration).

**Second Predicate Act (ORICO)**

55.     On August 31, 2010, in Case No. 10-08-13395 and in furtherance of the

Enterprise, Trackwell offered false, material testimony in Case No. 10-08-13395.  Trackwell

falsely testified that his telephone conversation with Bill Bushlen on August 5, 2010, was

addressed to the topic of Trackwell urinating in the public restroom of General Land Office, and

that Trackwell did not, in that conversation, threaten Bill Bushlen regarding Bill Bushlen's

discussions and associations with plaintiff Bruce Hampton.

56.     Trackwell's actions as set out above violated ORS 162.065 (perjury).

**Third Predicate Act (ORICO)**

57.     On September 16, 2010, in Case No. 10-08-13395 and in furtherance of the

Enterprise,  Trackwell offered false, material testimony in Case No. 10-08-13395.  Trackwell

falsely testified that he had recorded his telephone conversations with Bill Bushlen.  Trackwell

also falsely testified that he could not produce the recordings in court because he had mailed them in the form of cassettes to his "office" in Nebraska for transcription.

58.    Trackwell's actions as set out above violated ORS 162.065 (perjury).

**Fourth Predicate Act (ORICO)**

59.    On April 14, 2011, in connection with Case No. 10-08-13395 and in furtherance of the Enterprise, Trackwell, with the assistance of Steen, believing that Bill Bushlen may be called as a witness to testify in the proceeding, threatened Bill Bushlen that unless he testified in the manner in which Trackwell wanted him to testify (which was false), Trackwell would file a lawsuit against Bill Bushlen.

60.    The actions of Trackwell and Steen violated ORS 162.285 (tampering with a witness) and ORS 162.235 (obstruction of judicial administration).

**Fifth through Seventh Predicate Acts (ORICO)**

61.    On or between September 28, 2010, and March 15, 2011, Shaw and WCSO, with the intent to benefit Trackwell and/or to harm plaintiff Bruce Hampton and in furtherance of the Enterprise, failed to perform a duty imposed upon Shaw and WCSO by law and which was clearly inherent in the nature of Shaw's position of courtroom deputy, and/or performed an act constituting an unauthorized exercise in official duties, to wit:

        a.    failing to assure that Trackwell came no closer than 15 feet to plaintiff Bruce Hampton in the courtroom as required by a Final Stalking Protective Order and Judgment ("SPO") entered against Trackwell in Case No.10-08-13395;

        b.    failing to protect the welfare of the judge, staff and plaintiffs by refusing the court clerk's request that he sit behind Trackwell in the courtroom; and

      c.      telling Trackwell that in his opinion as courtroom deputy, the court's issuance of the SPO against Trackwell was "wrong" and was an abuse of process.

62.      The actions by Shaw and WCSO set out above violated ORS 162.415 (official misconduct).

**Eighth through Tenth Predicate Acts (ORICO)**

63.      On the following dates, in connection with a proceeding to which plaintiffs were a party and in furtherance of the Enterprise, Trackwell caused to be filed in Wallowa County Circuit Court affidavits and other instruments which purported to be sworn to and signed by Trackwell, but which were not signed by Trackwell:

(a) January 3, 2012 Affidavit of Lloyd Trackwell;

(b) January 4, 2012 Affidavit of Lloyd Trackwell; and

(c) January 18, 2012 Affidavit of Lloyd Trackwell.

64.      Each incident set out above violated ORS 162.075 (false swearing) and ORS 162.065 (perjury).

**Eleventh through Fifteenth Predicate Acts (ORICO)**

65.      On or between December 7, 2010, and December 14, 2010, in connection with a proceeding to which plaintiffs were a party and in furtherance of the Enterprise, Trackwell signed and served five documents entitled "subpoena", signed by Trackwell.  Said documents simulated court documents and were sent by Trackwell knowing said documents were false.

66.      Each of the incidents out set above violated ORS 162.355 (simulating legal process).

**Sixteenth Predicate Act (ORICO)**

67.    On or between February 2, 2012, and March 12, 2012, in the case of *State of Oregon v. Trackwell*, Wallowa County Circuit Court Case No. 11-M6789 (hereinafter "Case No. 11-M6789") (criminal stalking), and in furtherance of the Enterprise, Steen and WCSO caused a GPS tracking device, ordered by the Wallowa County Circuit Court to be worn by Trackwell and to be monitored by Steen and WCSO, to be rendered inactive and/or failed to assure that the GPS tracking device was active.

68.    The actions by Steen set out above violated ORS 162.415 (official misconduct).

**Seventeenth Predicate Act (ORICO)**

69.    On November 7, 2011, in Case No. 11-M6789 and in furtherance of the Enterprise, Trackwell falsely testified that on October 21, 2011, Scott Hampton followed Trackwell's motor vehicle to the United States Post Office in Enterprise, Oregon.

70.    Trackwell's actions as set out above violated ORS 162.065 (perjury).

**Eighteenth Predicate Act (ORICO)**

71.    On December 22, 2011, in Case No 10-08-13395 and in furtherance of the Enterprise, Trackwell executed and filed a sworn Affidavit in which Trackwell falsely testified that Trackwell has located two witnesses whose testimony will establish that "the Hamptons lied to the Internal Revenue Service, to the State of Oregon, and in their sworn depositions about having donated $301, 822.00 to the Joseph Baptist Church in 2007."

72.    Trackwell's actions set above violated ORS 162.065 (perjury).

**Nineteenth Predicate Act (ORICO)**

73.    On December 22, 2011, in Case No. 10-08-13395 and in furtherance of the Enterprise, Trackwell executed and filed a sworn Affidavit in which Trackwell falsely testified

"that Bruce Hampton, Venese Hampton, and Scott Hampton all used information obtained through illegal interceptions of electronic communications of myself and family members...to interfere with my handling of my defense...."

74.     Trackwell's actions set out above violated ORS 162.065 (perjury).

**First Predicate Act (RICO)**

75.     On or between July 24, 2009 and October 1, 2009, Trackwell, having devised or intending to devise a scheme or artifice to defraud plaintiffs, or to obtain money by false pretenses or by representations as set out above, and for the purpose of executing that scheme or artifice, and/or for the purpose of attempting to do so and in furtherance of the Enterprise, falsely represented to The Nature Conservancy that Bruce Hampton had no authority to convey or transfer any interest in the property known as the "Pocket Ranch" and that plaintiffs had committed tax evasion, fraud and money laundering.  Trackwell's false communications to The Nature Conservancy as set out above were conveyed through use of the United States mail, telephone and/or internet.

76.     Trackwell's actions as set out above violated 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud).

**Second Predicate Act (RICO)**

77.     On September 18, 2009, Trackwell, having devised or intending to devise a scheme or artifice to defraud plaintiffs, or to obtain money by false pretenses or by representations as set out above, and for the purpose of executing that scheme or artifice, and/or for the purpose of attempting to do so and in furtherance of the Enterprise falsely represented to Oregon Department of Fish and Wildlife that Bruce Hampton had falsely applied for landowner preference hunting tags related to real property known as the "Pocket Ranch."  Trackwell's false

communications to Oregon Department of Fish and Wildlife as set out above were conveyed through use of the United States mail, telephone and/or internet.

78.     Trackwell's actions as set out above violated 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud).

**Third Predicate Act (RICO)**

79.     On August 5, 2010, Trackwell, having devised or intending to devise a scheme or artifice to defraud plaintiffs, or to obtain money by false pretenses as set out above, and for the purpose of executing that scheme or artifice, and/or for the purpose of attempting to do so, falsely represented to Bill Bushlen of General Land Office in a telephone conversation that Trackwell was recording their telephone conversation.  (At the time of the false representation, Trackwell believed Bill Bushlen would be called as a witness in Case No. 10-08-13395.)

80.     Trackwell's action as set above violated 18 U.S.C. §1343 (wire fraud).

**Fourth Predicate Act (RICO)**

81.     On April 6, 2011, Trackwell, having devised or intending to devise a scheme or artifice to defraud plaintiffs, or to obtain money by false pretenses as set out above, and for the purpose of executing that scheme or artifice, and/or for the purpose of attempting to do so and in furtherance of the Enterprise, falsely represented to Bill Bushlen of General Land Office in a telephone call that Trackwell was going to serve Bill Bushlen "on Monday" with summons in a lawsuit filed by Trackwell against Bill Bushlen.  At the time of the false representation, Trackwell believed Bill Bushlen would be called as a witness in Case No. 10-08-13395 and Trackwell knew that he had no intent to serve Bill Bushlen with summons in Case No. 10-08-13395.

82.     Trackwell's actions as set out above violated 18 U.S.C. §1343 (wire fraud).

**Fifth Predicate Act (RICO)**

83.    On August 24, 2011, Trackwell, in furtherance of the Enterprise, falsely represented to the United States Bankruptcy Court in Case No. 11-41830, as follows:

a.    That Trackwell is a resident of Nebraska;

b.    That Trackwell is "never in Oregon for more than a couple weeks at a time";

c.    That Bruce Hampton "took over the administration" of the Hampton Irrevocable Life Insurance Trust in 2006; and

d.    That Bruce and Venese Hampton had fraudulently "asserted that they had good title to the ranch in question."

84.    All of the actions set out above violated 18 U.S.C. §1503 (obstruction of justice).

**Sixth Predicate Act (RICO)**

85.    On November 17, 2011, in Case No. 11-38050, Trackwell, in furtherance of the Enterprise, failed to comply with the order of U.S. Bankruptcy Court Judge Trish Brown, which order required that Trackwell submit to an examination under Fed. R. Bankr. P. 2004 and produce copies of certain documents.

86.    Trackwell's actions as set out above violated 18 U.S.C. §1503 (obstruction of justice).

**Seventh Predicate Act (RICO)**

87.    On March 23, 2012, Trackwell, in furtherance of the Enterprise, falsely represented to the United States Bankruptcy Court for the District of Oregon in Case No. 11-38050, in his affidavit in support of his Motion for New Trial, that plaintiffs (who were creditors in the bankruptcy proceeding) failed to provide to Trackwell as debtor a copy of Exhibit 60,

Transcript: October 20 Meeting of Creditors, in anticipation of the Evidentiary Hearing scheduled for March 12, 2012.

88.    Trackwell's actions as set out above violated 18 U.S.C. §1503 (obstruction of justice).

89.    Defendants and the associated persons acted maliciously in all of the actions set out above, knowing there was no basis in fact or law for the lies they were disseminating.

90.    The actions of defendants and the associated persons set out above were made in furtherance of the Enterprise and were motivated by, among other things:  (a) a desire to injure each plaintiff by depriving each plaintiff of contractual rights established with the USDA, NRCS, The Nature Conservancy and with Junior and Rose Lewis; (b) a desire to retaliate against each plaintiff for their exercise of rights protected by the United States Constitution including, but not limited to, the efforts of Venese Hampton and Bruce Hampton to defend themselves in court against attempts to collect the debt allegedly owed to ABM; (c) a desire to market and sell the Imnaha Ranch or an interest therein; and (d) a desire to hinder, obstruct, and prevent any such sale by other landowners in the Imnaha area.

91.    As a result of defendants' conduct on and after July 1, 2009, plaintiff Venese Hampton was subjected to extreme embarrassment, as well as ridicule and scorn throughout Wallowa County and elsewhere, all to Venese Hampton's noneconomic damage in the sum of $5,000,000.00. Also as a result of defendant's conduct on and after July 1, 2009, Plaintiff Bruce Hampton was subjected to extreme embarrassment, as well as ridicule and scorn throughout Wallowa County and elsewhere, all to Bruce Hampton's noneconomic damage in the sum of $2,500.000.00.

92.    Plaintiffs complied with ORS 30.275 by delivering a Tort Claims Notice within

the applicable time period set out in ORS 30.275.

93.     Plaintiffs did not discover, and could not through the exercise of reasonable diligence have discovered, the involvement of Steen, Shaw, WCSO, or Wallowa County in the above actions until on or after March 15, 2011.  Plaintiffs did not discover, and could not through the exercise of reasonable diligence have discovered the involvement of Castilleja in the above actions until on or after September 16, 2011.

94.     The above acts of racketeering constitute a pattern of racketeering activity aimed at discrediting, defaming, coercing, extorting, humiliating, and injuring plaintiffs and other persons against whom defendants and associated persons conspired, and aimed at taking or extorting money from plaintiffs and others against whom defendants and associated persons conspired through wrongful and illegal means including, but not limited to, by discrediting and defaming plaintiffs and others against whom defendants and the associated persons conspired, and by disseminating false allegations of wrongful, illegal and/or criminal conduct by plaintiffs and others against whom defendants and the associated persons conspired.

95.     As a result of defendants' conduct, plaintiffs were forced to retain the services of an attorney, and on and after July 1, 2009, incurred approximately $1,000,000.00 in costs and attorney fees.

96.     As a further result of defendants' conduct, plaintiffs suffered economic damages as follows:

    a.     $3,600,000.00 in 2010 due to loss of plaintiffs' contractual and/or business relationship with The Nature Conservancy; and

    b.     $200,000.00 in 2010 due to loss of plaintiffs' contractual relationship with Junior Lewis and Rose Lewis.

PAGE 26 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Count 1:  Against All Defendants)**

97.     Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

98.     Defendants' conduct as set forth above deprived plaintiffs, without due process, of property and liberty interests including, but not limited to their interests in:  (a) actual and prospective business and contractual relationships, (b) pursuing the common occupations or professions of life, (c) future profits from real property sales and other transactions, (d) real property owned by plaintiffs, including but not limited to their interest in being able to sell such property for its full value, and (e) goodwill.

99.     With respect to the conduct set forth above, defendants were acting under color of state law.

100.    The conduct set forth above was committed by Steen and/or Castilleja, officials with final policy-making authority in the relevant area, and/or ratified, along with the basis therefor, by Steen and/or Castilleja.

101.    Defendant Wallowa County and defendant WCSO acted with deliberate indifference toward the rights of Venese Hampton and Bruce Hampton by failing to adequately supervise their agents and employees, and by failing to adopt policies necessary to prevent their agents and employees from causing and committing constitutional violations.

102.    In addition to damages as set forth above, plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to an award of their reasonable attorney's fees and costs.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Count 2:  Against All Defendants)**

103.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

104.    Defendants' conduct as set forth above was motivated by a desire to retaliate against plaintiffs for their exercise of rights guaranteed by the United States Constitution,

including but not limited to the right of access to the courts and the right to petition the government for redress of grievances.

105.    With respect to the conduct set forth above, defendants were acting under color of state law.

106.    The conduct set forth above was committed by Steen and/or Castilleja, officials with final policy-making authority in the relevant area, and/or ratified, along with the basis therefor, by Steen and/or Castilleja.

107.    Defendant Wallowa County and defendant WCSO acted with deliberate indifference toward the rights of Venese Hampton and Bruce Hampton by failing to adequately supervise their agents and employees, and by failing to adopt policies necessary to prevent their agents and employees from causing and committing constitutional violations.

108.    In addition to damages as set forth above, plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to an award of their reasonable attorney's fees and costs.

**THIRD CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Count 3:  Against All Defendants)**

109.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

110.    Defendants' conduct as set forth above was defamatory.  It was committed with the purpose of, and had the effect of, causing the persons and/or entities described above to terminate their existing and/or prospective business and/or contractual relationships with plaintiffs.  The resulting termination of such relationships was foreseeable to defendants and other relevant persons at all material times.

111.    With respect to the conduct set forth above, defendants were acting under color of state law.

112.    The conduct set forth above was committed by Steen and/or Castilleja, officials

PAGE 28 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

with final policy-making authority in the relevant area, and/or ratified, along with the basis

therefor, by Steen and/or Castilleja.

113.    Defendant Wallowa County and defendant WCSO acted with deliberate

indifference toward the rights of Venese Hampton and Bruce Hampton by failing to adequately

supervise their agents and employees, and by failing to adopt policies necessary to prevent their

agents and employees from causing and committing constitutional violations.

114.    In addition to damages as set forth above, plaintiffs are entitled, pursuant to 42

U.S.C. § 1988, to an award of their reasonable attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Count 4:  Against All Defendants)**

115.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

116.    Defendants' conduct as set forth above constituted arbitrary law enforcement

activity for the purpose of harassment and interference, and deprived plaintiffs, without due

process, of their liberty and/or property interests, including but not limited to:  (a) actual and

prospective business and contractual relationships, (b) pursuing the common occupations or

professions of life, (c) future profits from real property sales and other transactions, (d) real

property owned by plaintiffs, including but not limited to their interest in being able to sell such

property for its full value, and (e) goodwill.

117.    With respect to the conduct set forth above, defendants were acting under color of

state law.

118.    The conduct set forth above was committed by Steen and/or Castilleja, officials

with final policy-making authority in the relevant area, and/or ratified, along with the basis

therefor, by Steen and/or Castilleja.

119.    Defendant Wallowa County and defendant WCSO acted with deliberate

indifference toward the rights of Venese Hampton and Bruce Hampton by failing to adequately supervise their agents and employees, and by failing to adopt policies necessary to prevent their agents and employees from causing and committing constitutional violations.

120.    In addition to damages as set forth above, plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to an award of their reasonable attorney's fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Count 5: Against All Defendants)**

121.    Plaintiffs repeat and incorporated by reference paragraphs 1-96 above.

122.    Defendants' conduct as set forth above constituted wrongful initiation and prosecution of civil proceedings against plaintiffs in Case Nos. 08-01-12961, 3:11-CV-467-MO, and 3:11-CV-00627-MO, and was motivated by defendants' desire to retaliate against plaintiffs for their exercise of rights guaranteed by the United States Constitution including, but not limited to, plaintiffs' right of access to the courts, their right to petition the government for redress of grievances, and by defendants' desire to defame plaintiffs for the purpose of causing Junior Lewis, Rose Lewis, and The Nature Conservancy to terminate their existing and/or prospective business and/or contractual relationships with plaintiffs.

123.    The conduct set forth above was committed by Steen and/or Castilleja, officials with final policy -making authority in the relevant area and/or ratified, along with the basis therefore, by Steen and Castilleja.

124.    Defendant Wallowa County and defendant WCSO acted with deliberate indifference toward the rights of Venese Hampton and Bruce Hampton by failing to adequately supervise their agents and employees, and by failing to adopt policies necessary to prevent their agents and employees from causing and committing constitutional violations.

125.    As a result of defendants' actions set forth above, plaintiffs have suffered

economic damages in the sum of $750,000.00 and noneconomic damages in the sum of $1,000,000.00.

### SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress:  Against All Defendants)

126.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

127.    As to conduct in which Steen and/or Castilleja did not personally engage, Steen and Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

128.    The conduct set forth above constitutes intentional infliction of emotional distress, as a result of which plaintiff Venese Hampton suffered mental and emotional distress to her noneconomic damage in the sum of $5,000,000.00, and as a result of which plaintiff Bruce Hampton suffered mental and emotional distress to his noneconomic damage in the sum of $2,500,000.00.

### SEVENTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations-The Nature Conservancy/Venese Hampton: Against All Defendants)

129.    Plaintiff Venese Hampton repeats and incorporates by reference paragraphs 1-96 above.

130.    As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

131.    The conduct set forth above constitutes intentional interference with contractual relations between plaintiff Venese Hampton and The Nature Conservancy, and resulted in economic damages to plaintiff Venese Hampton in 2010 in the sum of $3,600,000.00, and noneconomic damages in the sum of $2,500,000.00.

132.    This Claim for Relief, together with the Ninth Claim for Relief, constitutes a separate occurrence for purposes of ORS 30.272.

**EIGHTH CLAIM FOR RELIEF**
**(Intentional Interference with Contractual Relations-The Nature**
**Conservancy/Bruce Hampton: Against All Defendants)**

133.    Plaintiff Bruce Hampton repeats and incorporates by reference paragraphs 1-96 above.

134.    As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

135.    The conduct set forth above constitutes intentional interference with contractual relations between plaintiff Bruce Hampton and The Nature Conservancy, and resulted in economic damages to plaintiff Bruce Hampton in 2010 in the sum of $3,600,000.00, and noneconomic damages in the sum of $1,000,000.00.

136.    This Claim of Relief, together with the Tenth Claim of Relief, constitutes a separate occurrence for purposes of ORS 30.272.

**NINTH CLAIM FOR RELIEF**
**(Intentional Interference with Business Relations-The Nature**
**Conservancy/Venese Hampton: Against All Defendants**)

137.    Plaintiff Venese Hampton repeats and incorporates by reference paragraphs 1-96.

138.    As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

139.    The conduct set forth above constitutes intentional interference with business relations between plaintiff Venese Hampton and The Nature Conservancy, and resulted in economic damages to plaintiff Venese Hampton in 2010 in the sum of $3,600,000.00, and

noneconomic damages in the sum of $2,500,000.00.

**TENTH CLAIM FOR RELIEF**
**(Intentional Interference with Business Relations-The Nature**
**Conservancy/Bruce Hampton: Against All Defendants)**

140.     Plaintiff Bruce Hampton repeats and incorporates by reference paragraphs 1-96 above.

141.     As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

142.     The conduct set forth above constitutes intentional interference with contractual relations, between plaintiff Bruce Hampton and The Nature Conservancy, and resulted in economic damages to plaintiff Bruce Hampton in 2010 in the sum of $3,600,000.00, and noneconomic damages in the sum of $1,000,000.00.

**ELEVENTH CLAIM FOR RELIEF**
**(Intentional Interference with Contractual Relations-Lewises/Venese Hampton:**
**Against All Defendants)**

143.     Plaintiff Venese Hampton repeats and incorporates by reference paragraphs 1-96.

144.     As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

145.     The conduct set forth above constitutes intentional interference with contractual relations between plaintiff Venese Hampton and the Lewises, and resulted in economic damages to plaintiff Venese Hampton in 2010 in the sum of $200,000.00, and noneconomic damages in the sum of $1,000,000.00.

146.     This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

PAGE 33 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**TWELFTH CLAIM FOR RELIEF**
**(Intentional Interference with Contractual Relations-Lewises/Bruce Hampton:**
**Against All Defendants)**

147.    Plaintiff Bruce Hampton repeats and incorporates by reference paragraphs 1-96.

148.    As to conduct in which Steen and/or Castilleja did not personally engage, Steen and/or Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

149.    The conduct set forth above constitutes intentional interference with contractual relations between plaintiff Bruce Hampton and the Lewises, and resulted in economic damages to plaintiff Bruce Hampton in 2010 in the sum of $200,000.00, and noneconomic damages in the sum of $1,000,000.00.

150.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

**THIRTEENTH CLAIM FOR RELIEF**
**(Defamation, Count 1: Venese Hampton Against All Defendants)**

151.    Plaintiff Venese Hampton repeats and incorporates by reference 1-96 above.

152.    The statements of Trackwell and Steen as set forth above were false and defamatory as to Venese Hampton, causing plaintiff Venese Hampton on or after July 1, 2009, to suffer economic damages in the sum of $4,805,000.00 and noneconomic damages in the sum of $5,000,000.00.

153.    As to conduct in which Steen did not personally engage, Steen knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.  Although Steen was acting in the course and scope of his employment with WCSO, the specific statements made by him, or with his assistance and/or encouragement, were outside the realm of Steen's official duties.

PAGE 34 – AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**FOURTEENTH CLAIM FOR RELIEF**
**(Defamation, Count 2: Bruce Hampton Against All Defendants)**

154.    Plaintiff Bruce Hampton repeats and incorporates by reference 1-96 above.

155.    The statements of Trackwell and Steen as set forth above were false and defamatory as to Bruce Hampton, causing plaintiff Bruce Hampton on or after July 1, 2009, to suffer economic damages in the sum of $4,805,000.00 and noneconomic damages in the sum of $2,500,000.00.

156.    As to conduct in which Steen did not personally engage, Steen knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.  Although Steen was acting in the course and scope of his employment with WCSO, the specific statements made by him, or with his assistance and/or encouragement, were outside the realm of Steen's official duties.

**FIFTEENTH CLAIM FOR RELIEF**
**(Invasion of Privacy: Venese Hampton  Against All Defendants)**

157.    Plaintiff Venese Hampton repeats and incorporates by reference paragraphs 1-96 above.

158.    Trackwell, Steen and Castilleja intentionally intruded upon plaintiff Venese Hampton's private affairs and concerns, causing plaintiff to suffer noneconomic damages in the sum of $5,000,000.00.

159.    As to conduct in which Steen and Castilleja did not personally engage, Steen and Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

**SIXTEENTH CLAIM FOR RELIEF**
**(Invasion of Privacy: Bruce Hampton  Against All Defendants)**

160.    Plaintiff Bruce Hampton repeats and incorporates by reference paragraphs 1-96 above.

161.    Trackwell, Steen and Castilleja intentionally intruded upon plaintiff Bruce Hampton's private affairs and concerns, causing plaintiff to suffer noneconomic damages in the sum of $2,500,000.00.

162.    As to conduct in which Steen and Castilleja did not personally engage, Steen and Castilleja knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

**SEVENTEENTH CLAIM FOR RELIEF**
**(Wrongful Initiation of Civil Proceedings, Count 1:  Against All Defendants)**

163.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

164.    Trackwell wrongfully initiated and prosecuted a civil proceeding against plaintiffs in Case No. 08-01-12961, causing plaintiffs to incur economic damages in the sum of $750,000.00 and noneconomic damages in the sum of $1,000,000.00.

165.    As to conduct in which Steen did not personally engage, Steen knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

166.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

**EIGHTEENTH CLAIM FOR RELIEF**
**(Wrongful Initiation of Civil Proceedings, Count 2: Against All Defendants)**

167.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

168.    Trackwell wrongfully initiated and prosecuted a civil proceeding against plaintiffs in Case No. 3:11-CV-467-MO, causing plaintiffs to incur economic damages in the sum of $1,000.00 and noneconomic damages in the sum of $100,000.00.

169.    As to conduct in which Steen did not personally engage, Steen knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

170.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

**NINETEENTH CLAIM FOR RELIEF**
**(Wrongful Initiation of Civil Proceedings, Count 3:  Against All Defendants)**

171.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

172.    Trackwell and Steen wrongfully initiated and prosecuted a civil proceeding against plaintiffs in Case No. 3:11-CV-00627-MO, causing plaintiffs to incur economic damages in the sum of $1,000.00 and noneconomic damages in the sum of $100,000.00.

173.    As to conduct in which Steen did not personally engage, Steen knew that the actor's conduct constituted a breach of duty and gave substantial assistance and/or encouragement to the actor so to conduct himself or herself.

174.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

**TWENTIETH CLAIM FOR RELIEF**
**(RICO Violations, Count 1: Against All Defendants)**

175.   Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

176.   Defendants violated 18 U.S.C. §1961-1968 as set forth above, by violating 18 U.S.C. § 1961(c) in particular and causing each plaintiff to suffer direct financial losses on and after July 1, 2009, in the sum of $4,805,000.00 as to each plaintiff.  Plaintiffs are each entitled to treble damages pursuant to 18 U.S.C. § 1964(c), and to their reasonable attorney fees pursuant to 18 U.S.C. § 1964 (c).

177.   This Claim for Relief, together with the Twenty-First Claim for Relief, constitutes a separate occurrence for purposes of ORS 30.272.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(RICO Violations, Count 2: Against All Defendants)**

178.   Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

179.   Defendants violated 18 U.S.C. 1961-1968 as set forth above, by violating 18 U.S.C. § 1961(d) in particular and causing each plaintiff to suffer direct financial losses on and after July 1, 2009, in the sum of $4,805,000.00.  Plaintiffs are each entitled to treble damages pursuant to 18 U.S.C. § 1964(c), and to their reasonable attorney fees pursuant to 18 U.S.C. § 1964(c).

**TWENTY-SECOND CLAIM FOR RELIEF**
**(ORICO Violations:  Against All Defendants)**

180.   Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

181.   Defendants violated ORS 166.715-.735 as set forth above, causing each plaintiff to suffer economic damages on and after July 1, 2009 in the sum of $4,805,000.00 and causing Plaintiff Venese Hampton to suffer noneconomic damages in the sum of $2,500,000.00, and causing Plaintiff Bruce Hampton to suffer noneconomic damages in the sum of $1,000,000.00.

Plaintiffs are each entitled to treble damages pursuant to ORS 166.725(7), and to their reasonable attorney's fees pursuant to ORS 166.725(14).

182.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

## TWENTY-THIRD CLAIM FOR RELIEF
### (Negligence:  Against All Defendants)

183.    Plaintiffs repeat and incorporate by reference paragraphs 1-96 above.

184.    Defendants negligently caused damage to each plaintiff as set forth above by intentionally, or with reckless disregard, failing to adequately supervise defendants' representatives, by failing to take adequate action when confronted with information regarding the actions and conduct of defendants' agents and employees, and by failing to conduct an adequate periodic review of defendants' representatives' actions.

185.    Had defendants conducted even the most cursory review of defendants' representatives' actions, conduct, and practices, defendants would have discovered defendants' representatives' deceptive, malicious, and unconstitutional practices, and would have prevented, in whole or in part, the damages incurred by Venese Hampton and the damage incurred by Bruce Hampton, each of whom incurred economic damages on or after July 1, 2009, in the sum of $4,805,000.00, and as a result of which plaintiff Venese Hampton incurred noneconomic damages after July 1, 2009, in the sum of $5,000,000.00, and plaintiff Bruce Hampton incurred noneconomic damages after July 1, 2009, in the sum of $2,500,000.00.

186.    This Claim for Relief constitutes a separate occurrence for purposes of ORS 30.272.

187.    This complaint does not join as a party defendant Judith Trackwell, who cannot be made a party defendant because of the automatic stay imposed under 11 U.S.C. § 362 arising

out of the case of *In Re Lloyd Ray Trackwell, Sr., et al*, United States Bankruptcy Court for the

Western District of Missouri, Case No. 09-61596-abf11.

## JURY DEMAND

188.    Plaintiffs hereby demand a jury trial on all claims and defenses.

WHEREFORE, plaintiffs pray for judgment as follows:

a.    In the amounts alleged above;

b.    Attorney's fees and costs;

c.    Pre-judgment and post-judgment interest at the highest lawful rates;

d.    Treble damages where appropriate; and

e.    Such other and further relief to which plaintiffs may be justly entitled under

law and equity.

Dated this 29th day of May, 2012.

Respectfully submitted,

ANGELI LAW GROUP LLC

s/ Kevin Sali
KEVIN SALI, OSB No. 044065
kevin@angelilaw.com
DAVID ANGELI, OSB No. 020244
david@angelilaw.com
 (503) 954-2232

HOSTETTER KNAPP, LLP
D. Zachary Hostetter, OSB No. 100541
Rebecca J. Knapp, OSB 012754
hklaw@eoni.com
(541) 426-4584

Attorneys for Plaintiffs