IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

BRUCE HAMPTON, an individual;                    Case No. 2:12-cv-00470-SU
VENESE HAMPTON, an individual; and
BRUCE HAMPTON, as trustee of the Bruce
& Venese Hampton Charitable Trust I and the          OPINION AND ORDER
Bruce & Venese Hampton Charitable Trust II,

   Plaintiffs,

  v.

FRED STEEN, individually and as Sheriff of
Wallowa County; WALLOWA COUNTY
SHERIFF'S OFFICE, a municipal subdivision
of the State of Oregon; WALLOWA COUNTY,
a municipal subdivision of the State of Oregon;
PAUL CASTILLEJA, individually and as
Commissioner of Wallowa County; and LLOYD
TRACKWELL, JR., aka Lloyd R. Trackwell,
aka Lloyd Ray Trackwell, individually and as an
agent and informant for Wallowa County and
Wallowa County Sheriff's Office,

   Defendants.
_____

Page 1 - OPINION AND ORDER

SULLIVAN, Magistrate Judge:

Before the court are nine separate motions to quash subpoenas which were served by *pro se* defendant Lloyd Trackwell, Jr., a/k/a Lloyd R. Trackwell, a/k/a Lloyd Ray Trackwell ("Trackwell"). On May 29, 2014, nonparty Chenoweth Law Group P.C. moved to quash a subpoena served on them by Trackwell (doc. #169).[1] On June 6, 2014, plaintiffs Bruce Hampton, Venese Hampton, and Bruce Hampton as trustee of the Bruce & Venese Hampton Charitable Trust I and the Bruce & Venese Hampton Charitable Trust II (collectively "Hamptons") moved to quash subpoenas served by Trackwell on nonparties D. Zachary Hostetter (doc. #173), Christian L. Brann (doc. #174), Caitlin Rice Hostetter (doc. #175), Charlene F. Wikstrom (doc. #176), Charles A. Wikstrom (doc. #177), Darrell A. Brann (doc. #178), Farm Services Agency (doc. #179), and Title One/Premier Title (doc. #180).  No response to the Motions to Quash have been filed.  For the reasons set forth below, the motions are GRANTED.

## BACKGROUND

The facts of this case are complicated as the Hamptons and Trackwell have been involved in litigation in one court or another since 2008.  *See* Order (doc. #104) at 2 n.1 (summarizing litigation history).  On April 15, 2014, the Hamptons filed a 44-page Third Amended Complaint ("TAC") containing 92 paragraphs of facts and 27 claims under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968, the Oregon Racketeer Influenced and Corrupt Organization Act ("ORICO"), Or. Rev. Stat. §§ 166.715–166.735, the Oregon Unlawful Debt Collection Practices Act ("OUDCPA"), Or. Rev. Stat. §§ 697.005–697.115,

---

[1] Chenoweth Law Group P.C. titled their submission "Objection to Subpoena" however because they request the court quash the subpoena, the court interprets their filing to be a Motion to Quash Subpoena.

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and numerous state common law torts.  The following facts are alleged in the TAC.

In August 2007, Trackwell sought and procured an agreement to serve as an agent for American Bank of Missouri ("ABM"), to collect a debt allegedly owed by the Hamptons to ABM. TAC ¶ 14.  However, the Hamptons claim they were never indebted to ABM.  *Id.*  The Hamptons assert, beginning on September 1, 2008, that Trackwell began attempting to collect the debt through a series of unlawful activities.  The Hamptons also allege that such attempts were made by Trackwell without his registering as a debt collector with the Oregon Department of Consumer and Business Services, as required by Or. Rev. Stat. 697.015.  *Id.* ¶¶ 15–16.

The Hamptons allege the unlawful activities by Trackwell include: filing lawsuits against them without probable cause, filing false reports about them with various state and federal law enforcement agencies, intentionally interfering with their business and contractual relationships with various third parties, contacting their pastor and other church members and falsely accusing the Hamptons of failing to pay their debts and committing crimes, stalking them and their family, filing fraudulent bankruptcy petitions, and causing the newspaper the U.S. Observer to publish defamatory articles about them.  *Id.* ¶¶ 12–13, 15, 22–33, 37–40, 48–55.

In addition to Trackwell, the TAC names as defendants Wallowa County Sheriff Fred Steen ("Sheriff Steen"), Wallowa County Commissioner Paul Castilleja ("Commissioner Castilleja"), Wallowa County Sheriff's Office ("WCSO"), and Wallowa County (collectively "County defendants").  The Hamptons allege Trackwell committed many of these unlawful activities in a conspiracy and with the assistance of Sheriff Steen, Commissioner Castilleja, WCSO, and Wallowa

County.  *Id.* ¶¶ 17, 19, 34, 41.  County defendants have pending motions to strike portions of the TAC (doc. #155) and to dismiss the TAC (doc. #157).

In early 2012, Trackwell was charged with criminal stalking in Wallowa County Circuit Court.  TAC ¶ 70.  On October 24, 2012, Trackwell was convicted of two counts of violating a stalking order and sentenced to two consecutive six month sentences and three years probation. Motion for Stay (doc #79) ¶ 6.  On January 17, 2013, this court stayed all proceedings in this case (doc. #104) pending release of Trackwell from jail.  The stay was also granted pending resolution of a state court proceeding in Wallowa County Circuit Court between the Hamptons and Trackwell. Following an order from the state court judge holding that proceeding in abeyance, the stay in this case was vacated on April 18, 2014 (doc. #149).

On May 1, 2014, prior to Trackwell filing a response to the TAC, the Clerk of Court, upon request of Trackwell, issued a series of subpoenas to various nonparties for production of documents.  These nonparties include Chenoweth Law Group P.C., D. Zachary Hostetter, Christian L. Brann, Caitlin Rice Hostetter, Charlene F. Wikstrom, Charles A. Wikstrom, Darrell A. Brann, Farm Services Agency, and Title One/Premier Title.  Production was to take place in various locations by June 13, 2014.  Chenoweth Law Group P.C. and the Hamptons timely moved to quash the subpoenas on the grounds they were improperly served, seek documents that are not relevant, and subject them to undue burden and expense.

## LEGAL STANDARDS

I.    Scope of Permissible Discovery

Federal Rule of Civil Procedure 26(b) provides for the scope of discovery as follows: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense . . . and appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id.* Under Rule 26(b)(2)(C) the court, on motion or on its own, must limit the frequency or extent of discovery if it determines any of the following: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

II.    Subpoenas

Federal Rule of Civil Procedure 45 authorizes the issuance of a subpoena to command a nonparty to produce designated documents, electronically stored information, or tangible things in its possession, custody or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). The court, on timely motion, must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). "[T]he scope of discovery through subpoena is the same as that applicable to Rule 34 and other discovery rules." Fed. R. Civ. P. 45 Advisory Committee Notes, 1970 Amendment; *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) ("Although irrelevance is not among the litany of enumerated reasons for quashing a

subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena.")

A party responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* District courts have broad discretion to determine whether a subpoena is unduly burdensome. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003) (district court did not abuse its discretion by quashing overbroad subpoena "served for the purpose of annoying and harassment and not really for the purpose of getting information.").

## DISCUSSION

I.    Chenoweth Law Group, P.C.

Nonparty Chenoweth Law Group, P.C. ("CLG") objects to a subpoena served on them by Trackwell and requests this court quash it. CLG Objection to Subpoena (doc. #169) at 1–2. CLG represented nonparty Martin S. Burck Associates, Inc. in protracted litigation relating to an unpaid service contract with nonparty Judith Trackwell, the mother of defendant Trackwell. *Id.* at 2.

In their objection, CLG states they attached a copy of Trackwell's subpoena as "Exhibit 1." *Id.* at 1. However, their objection contains no such attachment. Nonetheless, CLG states they received a subpoena from Trackwell in this case in 2012 with an identical document request

attached, which they objected to on November 9, 2012. *Id.* at 1 (citing CLG Objection to Subpoena (doc. #76, Ex. 1)). As such, the court will consider Trackwell's document request in CLG's previous objection along with their present objection.

CLG first objects to Trackwell's subpoena on technical grounds. CLG argues the subpoena was served on them by Trackwell, who is a party to the case, in violation of Rule 45(b)(1). *Id.* at 2. Further, CLG asserts Trackwell failed to serve notice of the subpoena on each party in this case prior to serving it to CLG, in violation of Rule 45(a)(4). *Id.* Because CLG failed to provide a copy of the current subpoena Trackwell served on them, the court is unable to quash the subpoena on technical grounds and declines to do so. *See Moon*, 232 F.R.D. at 637 (the party who moves to quash a subpoena has the burden of persuasion).

CLG also argues Trackwell's subpoena should be quashed based on more substantive grounds. Specifically, CLG argues Trackwell's subpoena request is both irrelevant and unduly burdensome. CLG Objection to Subpoena (doc. #169) at 2. Exhibit A to Trackwell's prior subpoena requests production of the following documents:

1.    All non-privileged communications by you from any source relating in any way to Lloyd Trackwell, Judith Trackwell, Mary Wickenkamp or any person believed to be associated with Lloyd Trackwell. Such communications should not be considered to include pleadings in any legal action involving Martin Burck and Judith Trackwell. Such communications include, but are not limited to, any and all communications from the following persons:

> Rahn Hostetter
> Rebecca Knapp
> Zachary Hostetter
> Bruce Hampton
> Jonel Ricker
> David Baum
> Andrew Strotman
> Thomas Peachey
> John Dobson

Alan Brickley

2.    All non-privileged communications sent by you to anyone the subject of which relates in any way to Lloyd Trackwell, Judith Trackwell or Mary Wickenkamp, except for legal pleadings filed in any legal action involving Martin Burck and Judith Trackwell.

CLG Objection to Subpoena (doc. #76) Ex. 1 at 2.

The court finds Trackwell's subpoena is both irrelevant and unduly burdensome. Defendant Trackwell is also referred to as Lloyd Trackwell Jr. His father, Lloyd Trackwell Sr., is not a party to this case. *See* TAC ¶ 8. The subpoena is not clear as to whether Trackwell seeks communications related to himself, his father, or both. Furthermore, Trackwell seeks communications between CLG and Judith Trackwell and Mary Wickenkamp, neither whom are parties in this case.[2] As noted above, Judith Trackwell is the mother of defendant Trackwell and according to the TAC, Mary Wickenkamp served as her attorney in a land purchase referred to as the Imnaha Ranch, which resulted in litigation. *Id.* ¶¶ 7–9.[3] CLG represented an opposing party in litigation with Judith Trackwell wholly unrelated to the instant case. CLG Objection to Subpoena (doc.#169). As a result, the court fails to see the relevance of any communications between CLG and Trackwell, Lloyd Trackwell Sr., Judith Trackwell, and Mary Wickenkamp.

Furthermore, in Request 1, Bruce Hampton is the only party in the instant case on the list of communications Trackwell seeks. D. Zachary Hostetter and Rebecca Knapp are counsel for the

[2] The TAC states Judith Trackwell is not a defendant in this case because she filed bankruptcy in the United States Bankruptcy Court for the Western District of Missouri, Case No. 09-61596-abf11, and an automatic stay is imposed under 11 U.S.C. § 362. TAC ¶ 196.

[3] The relevancy of these facts regarding the Hamptons' claims against defendants have been questioned and are subject to the County defendants' motion to strike (doc. #155).

Hamptons.[4]  The court is not aware who the other listed persons are nor are they mentioned in the

TAC.  While communications between Bruce Hampton and Trackwell may be relevant, a request

for any and all communications from CLG is unduly burdensome and may be obtained through

discovery between the parties.  Similarly, communications between Zachary Hostetter and Trackwell

may be relevant, but also unduly burdensome for CLG to produce.  Taken as a whole, Trackwell's

subpoena served on CLG on its face is irrelevant and unduly burdensome, and appears to have been

served to harass and annoy opposing counsel in a different case, and not for the purpose of obtaining

information in this case.  *See Mattel,* 353 F.3d at 813–14.  As such, CLG's motion to quash (doc.

#169) is GRANTED.

II.     Hamptons' Motions to Quash

        The Hamptons move to quash eight subpoenas served by Trackwell on nonparties D. Zachary

Hostetter (doc. #173), Christian L. Brann (doc. #174), Caitlin Rice Hostetter (doc. #175), Charlene

F. Wikstrom (doc. #176), Charles A. Wikstrom (doc. #177), Darrell A. Brann (doc. #178), Farm

Services Agency (doc. #179), and Title One/Premier Title (doc. #180).  Similar to the subpoena

served on CLG, the Hamptons argue that service was defective as Trackwell served the subpoenas

himself in violation of Rule 45(b)(1), and that Trackwell failed to serve advance notice of the

subpoenas on each party, in violation of Rule 45(a)(4).  Furthermore, the Hamptons assert the

information sought by Trackwell in the subpoenas is not relevant under Rule 26(b)(1).

        As a preliminary matter, the court must first consider whether the Hamptons have standing

to bring a motion to quash a subpoena served on a nonparty.  In general, a party lacks standing to

quash a subpoena issued to a nonparty, unless the party making the challenge claims a personal right

---

        [4] Rebecca Knapp withdrew from the case on March 21, 2014 (doc. #143).

Page 9 - OPINION AND ORDER

or privilege in the material sought. *Webster v. Nw. Cancer Specialists, P.C.*, 2012 WL 2861664, *1 (D. Or. July 7, 2012) (citations omitted).

Here the Hamptons do not have standing as they do not claim any form of personal right or privilege in the documents request by Trackwell. Nonetheless, under Rule 45(d)(1) the district court must ensure that a party issuing and serving a subpoena take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). This rule imposes an obligation on the court even if a party has no standing to move to quash. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012); *see also Chevron Corp. v. Donziger*, 2013 WL 4536808, * 11–12 (N.D. Cal. Aug. 22, 2013) (court has an independent obligation even if a party does not have standing to quash a subpoena issued to nonparty).[5]

Moreover, in order for a party to obtain any form of discovery, the material must be nonprivileged and relevant to any party's claims or defenses. Fed. R. Civ. P. 26(b)(1). The court, on its own, must limit discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Applying these Rules, the court will consider whether Trackwell's subpoenas seek nonprivileged and relevant material and whether they pose an undue burden on the nonparties subpoenaed.[6]

---

[5] *Mount Hope Church* and *Chevron Corp.* cite Rule 45(c)(1) which has since been moved to Rule 45(d)(1). *See* Fed. R. Civ. P. 45 Advisory Committee Notes, 2013 Amendment.

[6] Because the Hamptons do not have standing to object to the subpoenas, the court will not consider their arguments related to improper service or failure to provide advance notice of

A.    <u>D. Zachary Hostetter</u>

Trackwell served a subpoena to D. Zachary Hostetter, the attorney for the Hamptons in this case.  Pls.' Mot. Quash Subpoena of D. Zachary Hostetter (doc. #173) Ex. 1.  Exhibit A to the subpoena requests production of the following materials:

1.    Any and all documents executed by you, including any deed, contract, lease, opinion or other writing evidencing an ownership interest in any equity claiming ownership of the property at 71688 Lower Imnaha Rd., Imnaha, Oregon 97842.

2.    Any and all documents related in any way to the purchase of cattle by you since October 22, 2013, including all checks, loan documents, brand transfer documents, security agreements.

3.    Any and all financial statements provided by you to any lender since October 23, 2013.

4.    Any and all contracts to which you are a party and which in any way relate to Charles Wickstrom, Charlene Wikstrom or any entity in which they may hold an interest, including any and all partnership agreements, articles of incorporation for any entity, any and all loan contracts, lease agreements, deeds of trust, other documents.

*Id.* Ex. 1, at 3.

The Court does not find any of these subpoena requests relevant to the Hamptons' claims against Trackwell or the County defendants. The Court fails to see the relevance of documents that appear to seek information about Mr. Hostetter's property and personal finances that do not relate to the allegations of the TAC.  Additionally, all these discovery requests seek a large amount of material and therefore are unduly burdensome.

Taken as a whole, the Court finds the subpoena served on Mr. Hostetter is unduly burdensome and the documents sought therein are irrelevant to the case between the Hamptons and Trackwell and the County defendants. The subpoena appears designed to harass and annoy Mr.

the subpoenas to the parties.

Hostetter, and not for the purpose of obtaining information related to this case. *See Mattel*, 353 F.3d at 813–14. As such, the Hamptons' motion to quash the subpoena served on D. Zachary Hostetter (doc. #173) is GRANTED.

B. Christian L. Brann

Trackwell served a subpoena on Christian L. Brann. Pls.' Mot. Quash Subpoena of Christian L. Brann (doc. #174) Ex. 1. Ms. Brann is the sister of Mr. Hostetter. Decl. of D. Zachary Hostetter (doc. #181) ¶ 5. Exhibit A of the subpoena requests production of the following materials:

1.    Any and all documents in your custody and control, including any deeds, affidavits, real estate transfer statements, closing statements, checks, money orders, letters of credit, appraisals, tax statements, correspondence, which relate in any way to the following:

A.    The purchase or sale by you of any real property in the state of Idaho in the calendar year 2013.

B.    The purchase or sale by you of any real property outside the State of Idaho, Including property located within Wallowa County, Oregon.

C.    The year 2013 sale of three residential lots located within the State of Idaho As testified to by Charles Wikstrom under oath United States Bankruptcy Court in Kansas City, MO on or about November 26, 2013.

D.    Any and all transactions since 2004 engaged in by you which relate to D. Rahn Hostetter, Rebecca Hostetter, the Hostetter Family Trust, Audrey Hostetter, D. Ray Hostetter, D. Zachary Hostetter, Caitlin Rice Hostetter, Darrell Brann, Kristin Brann.

E.    Any and all communications by you which relate in any way to Judith Trackwell or Lloyd Trackwell Jr.

Pl.'s Mot. Quash Subpoena of Christian L. Brann Ex. 1, at 3.

The Court does not find any of these subpoena requests relevant to the Hamptons' claim against Trackwell or the County defendants. Primarily, the only connection Ms. Brann has to this case appears to be that she is the sister of Mr. Hostetter. Taken as a whole, the court finds

Page 12 - OPINION AND ORDER

Trackwell's subpoena served on Ms. Brann on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy both Ms. Brann and Mr. Hostetter, and not for the purpose of obtaining information related to this case. *See Mattel,* 353 F.3d at 813–14.  As such, the Hamptons' motion to quash the subpoena of Christian L. Brann (doc. #174) is GRANTED.

  C.  <u>Caitlin Rice Hostetter</u>

  Trackwell served a subpoena on Caitlin Rice Hostetter.  Pls.' Mot. Quash Subpoena of Caitlin Rice Hostetter (doc. #175) Ex. 1.  Ms. Hostetter is the wife of Mr. Hostetter.  Hostetter Decl. ¶ 6.  Exhibit A to the subpoena served on Ms. Hostetter requests the exact same documents listed in Exhibit A of the subpoena served on Mr. Hostetter.  As such, the court will not repeat them.

  The subpoena served on Ms. Hostetter requests documents that are irrelevant to the Hamptons' claims and is unduly burdensome.  Ms. Hostetter's only connection to this case appears to be that she is married to Mr. Hostetter.   Taken as a whole, the court finds Trackwell's subpoena served on Ms. Hostetter on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy both Ms. Hostetter and Mr. Hostetter, and not for the purpose of obtaining information related to this case. *See Mattel,* 353 F.3d at 813–14.  As such, the Hamptons' motion to quash the subpoena of Caitlin Rice Hostetter (doc. #175) is GRANTED.

  D.  <u>Charlene F. Wikstrom</u>

  Trackwell served a subpoena on Charlene F. Wikstrom.  Pls.' Mot. Quash Subpoena of Charlene F. Wikstrom (doc. #176) Ex. 1.  The court is not aware who Ms. Wikstrom is and whether she is related to any of the parties in this case.  The subpoena indicates it was served to a P.O. Box in Huston, Idaho. *Id.* Ex. 1, at 2.  Exhibit A to the subpoena served on Ms. Wikstrom requests the

same documents listed in Exhibit A of the subpoena served on Ms. Brann. As such, the court will not repeat them.

The subpoena served on Ms. Wikstrom requests documents that are both irrelevant to the Hamptons' claims and is unduly burdensome. The court is not aware of how Ms. Wikstrom is connected to this case as she is not mentioned anywhere in the Hamptons' TAC. Taken as a whole, the court finds Trackwell's subpoena served on Ms. Wikstrom on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy and not for the purpose of obtaining information related to this case. *See Mattel,* 353 F.3d at 813–14. As such, the Hamptons' motion to quash the subpoena of Charlene F. Wikstrom (doc. #176) is GRANTED.

E.    Charles A. Wikstrom

Trackwell served a subpoena on Charles A. Wikstrom. Pls.' Mot. Quash Subpoena of Charles A. Wikstrom (doc. #177) Ex. 1; *see also* Decl. of Charles A. Wikstrom (doc. #182) Ex. 1. Again, the court is not aware who Mr. Wikstrom is and whether he is related to any of the parties in this case. The subpoena indicates it was served on Mr. Wikstrom in Wilder, Idaho. Pls.' Mot. Quash Subpoena of Charles A. Wikstrom Ex. 1, at 2; Wikstrom Decl. Ex. 1, at 2. Exhibit A of the subpoena served on Mr. Wikstrom requests the same documents listed in Exhibit A of the subpoenas served on Ms. Brann and Ms. Wikstrom. As such, the court will not repeat them.

The subpoena served on Mr. Wikstrom requests documents that are both irrelevant to the Hamptons' claims and is unduly burdensome. The court is not aware how Mr. Wikstrom is connected to this case as he is not mentioned anywhere in the Hamptons' TAC. Taken as a whole, the court finds Trackwell's subpoena served on Mr. Wikstrom on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy and not for the purpose of obtaining

information in this case. *See Mattel,* 353 F.3d at 813–14. As such, the Hamptons' motion to quash the subpoena of Charles A. Wikstrom (doc. #177) is GRANTED.

      F.    <u>Darrell A. Brann</u>

Trackwell served a subpoena to Darrell A. Brann. Pls.' Mot. Quash Subpoena of Darrell A. Brann (doc. #178) Ex. 1; *see also* Decl. of Darrell Brann (doc. #183) Ex. 1. Mr. Brann is the brother-in-law of Mr. Hostetter. Hostetter Decl. ¶ 5. Exhibit A to the subpoena served on Mr. Brann requests production of the following:

1. Any and all documents in your custody and control, including any deeds, affidavits, real estate transfer statements, closing statements, checks, money orders, letter of credit, appraisals, tax statements, correspondence, which relate in any way to the following:

    A.    The purchase or sale by you of any real property in the state of Idaho in the calendar year 2013.

    B.    The purchase or sale by you of any real property outside the State of Idaho, Including property located within Wallowa County, Oregon.

    C.    The year 2013 sale of three residential lots located within the State of Idaho As testified to by Charles Wikstrom under oath United States Bankruptcy Court in Kansas City, MO on or about November 26, 2013.

    D.    Any and all transactions since 2004 engaged in by you which relate to D. Rahn Hostetter, Rebecca Hostetter, the Hostetter Family Trust, Audrey Hostetter, D. Ray Hostetter, D. Zachary Hostetter, Caitlin Rice Hostetter, Darrell Brann, Kristin Brann.

    E.    Any and all communications by you which relate in any way to Judith Trackwell or Lloyd Trackwell Jr.

    D.1.    Any and all documents executed by you, including any deed, contract, lease, option or other writing evidencing an ownership interest in any entity claiming ownership of the property at 71688 Imnaha Rd., Imnaha, Oregon 97842.

F.    Any and all documents related in any way to the purchase of cattle by you since October 22, 2013, including all checks, loan documents, brand transfer documents, security agreements.

G.    Any and all financial statements provided by you to any lender since April 1, 2013.

H.    Any and all documents relating to contracts to which you are a party and which in any way relate to Charles Wikstrom, Charlene Wikstrom or any entity in which they may hold an interest, including any and all partnership agreements, articles of organization for any entity, any and all loan contracts, lease agreements, deeds of trust.

I.    Any and all work or services provided to D. Rahn Hostetter or Rebecca Hostetter On any properties since 2005, including but not limited to the property at 71688 Lower Imnaha Rd., Imnaha Oregon 97842, and the property at 67810 Elk Mountain Road, Enterprise, Oregon.

Pls.' Mot. Quash Subpoena of Darrell A. Brann Ex. 1, at 3–4; *see also* Brann Decl. Ex. 1, at 3–4.

Subpoena Requests D.1, F, G, and H request the same documents as in the subpoenas served on Mr. Hostetter and Ms. Hostetter. As noted above, these documents are not related to the Hamptons' claims and the request is unduly burdensome. Subpoena Requests A, B, C, and D request the same documents as in the subpoenas served on Ms. Brann, Ms. Wikstrom, and Mr. Wikstrom. As noted above, these documents are not related to the Hamptons' claims and the request is unduly burdensome. Finally, Subpoena Request I is not relevant to the Hamptons' claims.

Mr. Brann has no connection to this case and it appears only that he is the brother-in-law of Mr. Hostetter. Taken as a whole, the court finds Trackwell's subpoena served on Mr. Brann on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy Mr. Brann and Mr. Hostetter, and not for the purpose of obtaining information in this case. *See Mattel,* 353 F.3d at 813–14. As such, the Hamptons' motion to quash the subpoena of Darrell A. Brann (doc. #178) is GRANTED.

Page 16 - OPINION AND ORDER

G.    <u>Farm Services Agency</u>

Trackwell served a subpoena to Farm Services Agency.  Pls.' Mot. Quash Subpoena of Farm Services Agency (doc. #179) Ex. 1.  The court is not aware of any connection Farm Services Agency has to this case.  The subpoena indicates Farm Services Agency was served in Pendleton, Oregon. *Id.* Ex. 1, at 2.  The subpoena requests production of the following materials:

1.    Files regarding any and all loans to D. Zachary Hostetter and/or Caitlin Rice Hostetter, Including and all any and all documents in your custody and control related thereto, including any deeds, affidavits, real estate transfer statements, closing statements, checks, money orders, letters of credit, appraisals, tax statements, correspondence, financial statements, UCC filings, guarantees, deeds of trust, or security agreements.

*Id.* Ex. 1, at 3.

Trackwell's request is not relevant to the Hamptons' claims in this case.  D. Zachary Hostter and Caitlin Rice Hostetter are not named in the TAC, other than Mr. Hostetter serving as attorney for the Hamptons.  Taken as a whole, the court finds Trackwell's subpoena served on Farm Services Agency on its face is both irrelevant and unduly burdensome, and clearly served to harass and annoy Mr. Hostetter, and not for the purpose of obtaining information in this case.  *See Mattel,* 353 F.3d at 813–14.  As such, the Hamptons' motion to quash the subpoena of Farm Services (doc. #179) is GRANTED.

H.    <u>Title One/Premier Title</u>

Finally, Trackwell served a subpoena to Title One/Premier Title.  Pls.' Mot. Quash Subpoena to Title One/Premier Title (doc. #180) Ex. 1.  Again, the court is not aware of any connection Title One/Premier Title has to this case.  The subpoena indicates it was served in Nampa, Idaho.  *Id.* Ex. 1, at 2.  The subpoena requests production of the following materials:

1.      Any and all documents in your custody and control, including any deeds, affidavits, real estate transfer statements, closing statements, checks, money orders, letter of credit, appraisals, tax statements, correspondence, which relate in any way to the following:

   A.      Any transaction involving Charles Wikstrom, Wilder, Idaho.

   B.      Any transaction involving Charlene Wikstrom, Wilder, Idaho.

   C.      Any transaction involving D. Rahn Hostetter, Enterprise, Oregon.

   D.      Any transaction involving Rebecca Hostetter, Enterprise, Oregon.

   E.      Any transaction involving Audrey Hosetter.

   F.      Any transaction involving D. Ray Hostetter.

   G.      Any transaction involving the Hostetter Family Trust 1994.

*Id.* Ex. 1, at 3.

Trackwell's request is not relevant to the Hamptons' claims in this case. As noted above, the court is not aware how Mr. Wikstrom or Ms. Wikstrom are connected to this case. Presumably, D. Rahn Hostetter, Rebecca Hostetter, Audrey Hostetter, and D. Ray Hostetter, and the Hostetter Family Trust 1994 are related to Mr. Hostetter. Taken as a whole, the court finds Trackwell's subpoena served on Farm Services Agency requests documents that are irrelevant and is unduly burdensome. The subpoena was clearly served to harass and annoy Mr. Hostetter, and not for the purpose of obtaining information in this case. *See Mattel,* 353 F.3d at 813–14. As such, the Hamptons' motion to quash the subpoena of Title One/Premier Title (doc. #180) is GRANTED.

III.   Discovery Order

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2003). The Ninth Circuit has long held that nonparties subject to

Page 18 - OPINION AND ORDER

discovery requests deserve extra protection from the courts. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1983)).

Based on the facially irrelevant and overly broad subpoenas Trackwell has served on nonparties, who are in no way connected to this litigation, it is clear Trackwell has abused the subpoena process in order to harass and annoy nonparties, primarily Mr. Hostetter, rather than to seek information relevant to this case. All nine of these subpoenas were served by Trackwell prior to filing a substantive response to the Hamptons' TAC.[7] The Hamptons state in their motions to quash:

> Trackwell's abuse of this court's subpoena process is just one more stalking-type activity in a succession of such activities against the plaintiffs over the past six years, some of which activities resulted in stalking convictions and jail time for Trackwell, as this court is aware. One of Trackwell's stalking-type techniques over the past decade is to target his victims' attorneys. The referenced subpoenas are a blatant example of his *modus operandi*.

*See* Pl.'s Mot. Quash Subpoena of D. Zachary Hostetter (doc. #173) at 4.

A district court has wide discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). This court has authority under Rule 26(b)(2)(C)(iii) to limit discovery, including ordering a party who has used the subpoena process for an illegitimate purpose to obtain court approval prior to serving additional subpoenas. *See Groce v. Claudat*, 2012 WL 1831574, *4 (S.D. Cal. May 18, 2012). Accordingly, pursuant to Rule 26(b)(2)(C)(iii), Trackwell is hereby prohibited from serving or attempting to serve any additional subpoenas in this case,

---

[7] Trackwell filed a Motion to Strike (doc. #159) and Amended Motion to Strike (doc. #161) which the court denied (doc. #187) and ordered him to file a response to the TAC.

including any previously issued by the Clerk of Court, without prior approval of the court.  Failure to comply with this order may subject Trackwell to sanction by the court.

## CONCLUSION

Based upon the foregoing, Chenoweth Law Group P.C.'s Motion to Quash Subpoena (doc. #169) is GRANTED.  The Hamptons' Motions to Quash Subpoenas issued to D. Zachary Hostetter (doc. #173), Christian L. Brann (doc. #174), Caitlin Rice Hostetter (doc. #175), Charlene F. Wikstrom (doc. #176), Charles A. Wikstrom (doc. #177), Darrell A. Brann (doc. #178), Farm Services Agency (doc. #179), and Title One/Premier Title (doc. #180) are all GRANTED.

Trackwell is further prohibited from serving or attempting to serve any additional subpoenas in this case, including any previously issued by the Clerk of Court, without prior approval of the court.  Failure to comply with this order may subject Trackwell to sanction by the court.  The Clerk of Court is directed not to issue any additional subpoenas to Trackwell unless further instructed by the court.

IT IS SO ORDERED.

Dated this 27th day of June, 2014.

/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge