IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

BRUCE HAMPTON, an individual;
VENESE HAMPTON, an individual; and
BRUCE HAMPTON, as trustee of the
Bruce & Venese Hampton Charitable
Trust I and the Bruce & Venese
Hampton Charitable Trust II,

        Plaintiffs,

     v.

FRED STEEN, individually and as
Sheriff of Wallowa County; WALLOWA
COUNTY SHERIFF'S OFFICE, a municipal
subdivision of the State of Oregon;
WALLOWA COUNTY, a municipal subdivision
of the State of Oregon; PAUL CASTILLEJA,
individually and as Commissioner of
Wallowa County; and LLOYD TRACKWELL,
JR., aka Lloyd R. Trackwell, aka Lloyd
Ray Trackwell, individually and as an
agent and informant for Wallowa County
and Wallowa County Sheriff's Office,

        Defendants.

OPINION AND ORDER
Case No. 2:12-cv-00470-AA

---

Page 1 - OPINION AND ORDER

David H. Angeli
Benjamin N. Souede
Angeli Ungar Law Group LLC
121 SW Morrison St, Suite 400
Portland, OR 97204

D. Zachary Hostetter
Hostetter Law Group, LLP
203 E. Main St, Suite 2
P.O. Box 400
Enterprise, OR 97828
    Attorneys for plaintiffs

Steven A. Kraemer
Leslie A. Edenhofer
Hart Wagner LLP
1000 S.W. Broadway, Twentieth Floor
Portland, OR 97205
    Attorneys for defendants Fred Steen,
    Paul Castilleja, Wallowa County
    Sheriff's Office, and Wallowa County

Lloyd Trackwell, Jr.
4830 Woodhaven Drive
Lincoln, NE 68516
    Pro se defendant

AIKEN, Chief Judge:

    Plaintiffs Bruce Hampton, Venese Hampton, and Bruce Hampton as

trustee of the Bruce & Venese Hampton Charitable Trust I and the

Bruce & Venese Hampton Charitable Trust II (collectively

"Hamptons") filed a Third Amended Complaint ("TAC") against

defendants Wallowa County Sheriff Fred Steen ("Sheriff Steen"),

Wallowa County Commissioner Paul Castilleja ("Commissioner

Castilleja"), Wallowa County Sheriff's Office ("WCSO"), Wallowa

County (collectively "County defendants"), and pro se defendant

Lloyd Trackwell, Jr., a/k/a Lloyd R. Trackwell, a/k/a Lloyd Ray

Trackwell ("Trackwell"). The TAC alleges 27 claims under 42 U.S.C.

Page 2 - OPINION AND ORDER

§ 1983, the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, the Oregon Racketeer Influenced and Corrupt Organization Act ("ORICO"), Or. Rev. Stat. §§ 166.715-166.735, the Oregon Unlawful Debt Collection Practices Act ("OUDCPA"), Or. Rev. Stat. §§ 697.005-697.115, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, and numerous state common law torts.

Before the Court are a total of seven motions by defendants. County defendants move to quash subpoenas (docs. 193 & 195) issued to nonparties Frontier Communications and U.S. Cellular. County defendants and Trackwell separately move to strike portions of the TAC (docs. 155 & 206). Finally, County defendants and Trackwell separately move to dismiss the TAC (docs. 157, 211 & 215) under Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). For the reasons set forth below, the motions to quash subpoenas are granted, the motions to dismiss are granted, the motions to strike are denied as moot, and this case is dismissed.

## BACKGROUND

Since 2008, the Hamptons and Trackwell have filed numerous lawsuits against one another in this Court and Wallowa County Circuit Court. See Order (doc. 104) at 2 n.1 (summarizing lengthy litigation history). Now, once again, this Court is faced with a lawsuit between the Hamptons and Trackwell related to debt



Page 3 - OPINION AND ORDER

collection attempts by Trackwell. The Hamptons' 44-page TAC includes 92 paragraphs of facts and 27 claims for relief.

In August 2007, Trackwell sought and procured an agreement to serve as an agent for the American Bank of Missouri ("ABM"), to collect a debt allegedly owed by the Hamptons to ABM. TAC ¶ 14. The Hamptons, however, insist they were never indebted to ABM. Id. The Hamptons assert that beginning on September 1, 2008, Trackwell attempted to collect the debt through a series of unlawful activities. Id. ¶ 15. The Hamptons also allege that such attempts by Trackwell occurred without him registering as a debt collector with the Oregon Department of Consumer and Business Services ("ODCBS"), as required by Or. Rev. Stat. § 697.015. Id. ¶ 16.

On September 1, 2008, Trackwell and ABM filed a lawsuit against the Hamptons and others in Wallowa County Circuit Court ("ABM lawsuit") alleging breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, fraudulent conveyance, and fraud. See Compl., American Bank of Missouri et al. v. John Doe et al., Case No. 08-01-12961 (Wallowa Cnty. Cir. Ct. Sept. 1, 2008).[1] The Hamptons argue Trackwell lacked probable cause to initiate and prosecute the ABM lawsuit, and did so with malicious intent. TAC ¶¶ 15, 38. The Hamptons

---

[1] See Decl. of Leslie A. Edenhofer, Ex. A, May 6, 2014. The Court takes judicial notice of the complaint as it is part of the public record and therefore "not subject to reasonable dispute." Fed. R. Evid. 201(b); see also Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

further assert beginning in 2008, Trackwell, along with Sheriff Steen and WCSO, separately filed false reports about them with the ODCBS, Oregon State Police, Oregon Department of Justice, Internal Revenue Service ("IRS"), Federal Bureau of Investigation ("FBI"), Financial Crimes Enforcement Network of the United States Department of Treasury, and the U.S. Observer, alleging they had conspired with Marilyn Suarez, Wallowa Title Company, and others, to commit money laundering, theft, tax evasion, and fraud. Id. ¶¶ 12, 13, 15.

Beginning July 1, 2009, the Hamptons allege Trackwell conspired with Sheriff Steen, WCSO, and Wallowa County, in his efforts to wrongfully collect the alleged ABM debt from the Hamptons.[2]  Id. ¶ 17.  Specifically, the Hamptons argue Trackwell became an agent and informant for WCSO, and Sheriff Steen instructed Trackwell to report "everything that squeaks or moves" about the Hamptons.[3]  Id. ¶ 34.  Also beginning July 1, 2009, the Hamptons allege Trackwell intentionally interfered with the Hamptons' business and contractual relationships with various third parties including the United States Department of Agriculture

_____

[2] The Hamptons also state defendants "developed their conspiracy and plan" against the Hamptons in 2007, however they allege no facts related to collection of the ABM debt by defendants dating back to 2007.  Compare TAC ¶ 14 with TAC ¶ 15.

[3] The Hamptons allege this statement was made in 2007, however they also allege the conspiracy between Trackwell, Sheriff Steen, and WCSO began July 1, 2009.  Compare TAC ¶ 17 with TAC ¶ 34.

("USDA"), the United States Natural Resource Conservation Service ("NRCS"), the Oregon Watershed Enhancement Board ("OWEB"),[4] Junior and Rose Lewis, The Nature Conservatory, Marilyn Suarez and Wallowa Title Company, First American Title Company, Russ Ruonavaara and the General Land Office in Joseph, Oregon, and Community Bank, and in some cases wrongfully told these third parties the Hamptons were under investigation by various law enforcement agencies. Id. ¶¶ 15, 24-26, 29-31, 33. The Hamptons also allege in August 2009, Trackwell contacted their pastor and other church members at the Joseph Baptist Church and falsely accused the Hamptons of failing to pay their debts, evading taxes, committing fraud, and lying. Id. ¶¶ 15, 27.

On September 1, 2009, the Hamptons filed a lawsuit against Trackwell in Wallowa County Circuit Court ("Hampton lawsuit I") alleging violations of the OUDCPA. See Compl., Hampton v. Trackwell, Case No. 09-09-13224 (Wallowa Cnty. Cir. Ct. Sept. 1, 2009).[5] In April 2010, the Wallowa County Circuit Court consolidated Hampton lawsuit I with ABM lawsuit ("consolidated

---

[4] The Hamptons allege Trackwell intentionally interfered with their relationships with the USDA, NRCS, and OWEB in 2007, however they don't allege he began collection of the ABM debt until September 1, 2008. Compare TAC ¶ 15 with TAC ¶ 24.

[5] The complaint and amended complaint are part of the record in Hampton v. Trackwell, Case No. 2:10-cv-01233-SU (D. Or. Oct. 8, 2010). The Court takes judicial notice of these pleadings as they are part of the public record and therefore "not subject to reasonable dispute." Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

case"), and Trackwell removed the consolidated case to this Court. See Notice of Removal, Hampton v. Trackwell, Case No. 2:10-01233-SU (D. Or. Oct. 8, 2010).[6]   However, the consolidated case was ultimately remanded to Wallowa County Circuit Court by this Court. Hampton v. Trackwell, 2011 WL 653891, *1 (D. Or. Jan. 20, 2011) adopted by 2011 WL 653875, *1 (D. Or. Feb. 14, 2011).

On September 15, 2010, the Hamptons allege Trackwell, in furtherance of a scheme developed by him, Sheriff Steen, and WCSO, drove slowly past the Hampton residence numerous times, in attempts to lure them out of their home and to discredit, defame, and injure them.   TAC ¶¶ 15, 22.   The Hamptons allege when Trackwell drove past, he video recorded the events and was on a cell phone with Sheriff Steen stating "there may be gunfire."   Id. ¶¶ 15, 23.   The Hamptons assert this occurred because a hearing was scheduled the next day in Wallowa County Circuit Court to determine whether a Temporary Stalking Order issued against Trackwell should be made permanent.[7]   Id.   Also in 2010, the Hamptons allege Trackwell contacted their friend and former banker Richard Wood, and falsely

_____

[6] The Court takes judicial notice of the removal as it is part of the public record and therefore "not subject to reasonable dispute."   Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

[7] It is unclear which Wallowa County Circuit Court case this hearing pertained to as the Hamptons do not provide case information.   As discussed below, Trackwell has been subject to both civil and criminal stalking charges.

Page 7 - OPINION AND ORDER

accused the Hamptons of failing to pay their debts and committing crimes. Id. ¶¶ 15, 28.

On December 30, 2010, the Hamptons filed a lawsuit against Sheriff Steen in Wallowa County Circuit Court ("Hampton lawsuit II") seeking injunctive relief and a declaratory judgment that certain records in possession of Sheriff Steen constitute non-exempt public records under Or. Rev. Stat. § 192. See Compl., Hampton v. Steen, Case No. 10-12-13446 (Wallowa Cnty. Cir. Ct. Dec. 30, 2010).[8]  On April 15, 2011, Trackwell filed a lawsuit against the Hamptons and others in this Court ("Trackwell lawsuit I") alleging violations of 42 U.S.C. §§ 1983 & 1985, conspiracy, and slander. See Compl., Trackwell v. Hampton, Case No. 3:11-cv-00463-MO (D. Or. April 15, 2011).[9]

On May 23, 2011, Trackwell filed a second lawsuit in this Court against the Hamptons, Sheriff Steen, and others ("Trackwell lawsuit II") seeking a declaratory judgment that production of the records sought by the Hamptons in Hampton lawsuit II would violate his rights under the Bank Secrecy Act, 31 U.S.C. § 5113, et seq.

---

[8] The complaint is part of the record in Trackwell v. Hostetter, Case No. 3:11-cv-00627-MO (D. Or. May 23, 2011).  The Court takes judicial notice of the complaint as it is part of the public record and therefore "not subject to reasonable dispute." Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

[9] See Edenhofer Decl., Ex. B.  The Court takes judicial notice of the complaint and first amended complaint as it is part of the public record and therefore "not subject to reasonable dispute."  Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

See Compl, <u>Trackwell v. Hostetter</u>, Case No. 3:11-cv-00627-MO (D. Or. May 23, 2011).[10]   On July 29, 2011, Trackwell voluntarily dismissed Trackwell lawsuit II.   <u>See</u> Notice of Voluntary Dismissal, <u>Trackwell v. Hostetter</u>, Case No. 3:11-cv-00627-MO (D. Or. July 29, 2011).

On December 29, 2011, Judge Michael W. Mosman dismissed from Trackwell lawsuit I various defendant State of Oregon employees for failure to state a claim.   <u>See</u> Opinion and Order, <u>Trackwell v. Hampton</u>, Case No. 3:12-cv-00463-MO, 2011 WL 6935325 (D. Or. Dec. 29, 2011).   On July 24, 2012, Judge Mosman dismissed Trackwell lawsuit I in its entirety due to Trackwell's failure to serve remaining defendants, including the Hamptons, and for failure to prosecute the action.   <u>See</u> Order, <u>Trackwell v. Hampton</u>, Case No. 3:11-cv-00463-MO (D. Or. July 24, 2012).   The Hamptons assert Trackwell lacked probable cause to initiate or prosecute Trackwell lawsuits I and II and did so with malicious intent against them.[11] TAC ¶¶ 39-40.

_____

[10] The Court takes judicial notice of the complaint as it is part of the public record and therefore "not subject to reasonable dispute."   Fed. R. Evid. 201(b); <u>see also</u> <u>Lee</u>, 250 F.3d at 689.

[11] The Hamptons also allege Sheriff Steen lacked probable cause to initiate or prosecute Trackwell lawsuit II.   TAC ¶ 40. However, the complaint in Trackwell lawsuit II lists Sheriff Steen as a defendant.   <u>See</u> Compl. ¶ 11, <u>Trackwell v. Hostetter</u>, Case No. 3:11-cv-00627-MO (D. Or. May 13, 2011).

Finally, in 2011, the Hamptons allege Trackwell intentionally interfered with the Hamptons' business relationship with Bill Bushen and the General Land Office in Joseph, Oregon, by falsely accusing the Hamptons of failing to pay their debts and committing crimes. Id. ¶ 15, 32. Also in 2011, the Hamptons assert Commissioner Castilleja joined in the conspiracy. Id. ¶ 19. The Hamptons allege Trackwell, Sheriff Steen, and Commissioner Castilleja, regularly met in the WCSO office in the Wallowa County Justice Center, to coordinate their plans in furthering their conspiracy to discredit, defame, coerce, extort, and injure the Hamptons. Id. ¶ 41.

On July 6, 2011, Trackwell filed bankruptcy petitions in the United States Bankruptcy Court for the District of Oregon, Case No. 11-38050, and the United States Bankruptcy Court for the District of Nebraska, Case No. 11-41830 ("Trackwell bankruptcy cases").[12] TAC ¶ 52. The Hamptons allege these bankruptcy petitions were fraudulent. Id. On or about August 10, 2012, the Hamptons assert Trackwell, Sheriff Steen, Commissioner Castilleja, and others, caused the U.S. Observer to publish an article containing false statements about the Hamptons, in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure the Hamptons. Id. ¶ 54. On or about October 8, 2012, the Hamptons

---

[12] Records for the Trackwell bankruptcy cases are not before this Court.

allege Sheriff Steen caused the U.S. Observer to publish an article stating Sheriff Steen "was going to be making arrests [of the plaintiffs and others] soon" in furtherance of defendants' scheme to discredit, defame, coerce, extort, humiliate, and injure the Hamptons. Id. ¶ 55.

In 2010 and 2011, the Hamptons sought a civil stalking order against Trackwell in Hampton v. Trackwell, Wallowa County Circuit Court Case No. 10-08-13395 ("civil stalking case").[13] TAC ¶¶ 56-64, 74-77, 82-85. In 2011 and 2012, Trackwell was charged with criminal stalking in State of Oregon v. Trackwell, Wallowa County Circuit Court Case No. 11-M6789 ("criminal stalking case").[14] TAC ¶¶ 70-73. On October 24, 2012, Trackwell was convicted of two counts of violating a stalking order and sentenced to two consecutive six month sentences and three years probation. Motion for Stay (doc. 79) ¶ 6. On January 17, 2013, Magistrate Judge Patricia Sullivan stayed all proceedings in this case (doc. 104) pending release of Trackwell from jail. The stay was also granted pending resolution of the consolidated case remanded to Wallowa County Circuit Court. On April 11, 2014, Wallowa County Circuit

---

[13] Records for the civil stalking case are not before this Court.

[14] Records for the criminal stalking case are not before this Court.

Court Judge Lynn W. Hampton[15] entered a stipulated order holding the consolidated case in abeyance. See Stipulated Order, Hampton v. Trackwell, Case No. 09-09-13224 (Wallowa Cnty. Cir. Ct. April 11, 2014).[16]    According to the terms of the stipulation, the consolidated case is to be dismissed upon resolution of this case. Id.    As a result of Trackwell's release from jail and Judge Hampton's order, Magistrate Judge Sullivan vacated the stay in this case on April 18, 2014 (doc. 149).

On April 14, 2014, Trackwell filed another lawsuit in this Court against U.S. Secretary of the Treasury Jacob Lew ("Trackwell lawsuit III") seeking a declaratory judgment under the Bank Secrecy Act, an order requiring Secretary Lew to enforce the provisions under the Bank Secrecy Act, and an order requiring certain persons to provide documents to state or federal agencies. See Compl., Trackwell v. Lew, Case No. 3:14-cv-00618-AA (D. Or. April 14, 2014).[17]    On June 3, 2014, the Court dismissed Trackwell lawsuit III

----

[15]    Judge Hampton is not related to the plaintiffs in this case.

[16] See Decl. of D. Zachary Hostetter, Ex. 1, April 15, 2014. The Court takes judicial notice of the Wallowa County Circuit Court order as it is part of the public record and therefore "not subject to reasonable dispute." Fed. R. Evid. 201(b); see also Lee, 250 F.3d at 689.

[17] Although Trackwell's lawsuit is filed under seal, the Court takes judicial notice of the record as it is nonetheless "readily verifiable" and therefore "the proper subject of judicial notice." See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Page 12 - OPINION AND ORDER

for failure to comply with Fed. R. Civ. P. 8(a), because the Bank Secrecy Act does not provide a private cause of action, and because Trackwell's allegations in Trackwell lawsuit III appeared to be defenses he would like to raise in this case. See Order, Trackwell v. Lew, Case No. 3:14-cv-00618-AA (D. Or. June 3, 2014).

## STANDARDS

I.  Subpoenas

The court must quash a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). An attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Id. District courts have broad discretion to determine whether a subpoena is unduly burdensome. Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994). A subpoena is unduly burdensome where it seeks to compel production of documents regarding topics

Page 13 - OPINION AND ORDER

unrelated to or beyond the scope of litigation. See Mattel, Inc.
v. Walking Mountain Prods., 353 F.3d 792, 813-14 (9th Cir. 2003).

II.   Subject-Matter Jurisdiction

Where the court lacks subject-matter jurisdiction, the action
must be dismissed.  Fed. R. Civ. P. 12(b)(1).   A challenge to
standing is appropriately raised pursuant to Rule 12(b)(1).
Chandler v. State Farm Mut. Auto Ins. Co., 598 F.3d 1115, 1122 (9th
Cir. 2010).  "A Rule 12(b)(1) jurisdictional attack may be either
facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d 1035,
1039 (9th Cir. 2004) (citation omitted).  "In a facial attack, the
challenger assets that the allegations contained in a complaint are
insufficient on their face to invoke federal jurisdiction."  Id.
By contrast, a factual attack "disputes the truth of the
allegations that, by themselves, would otherwise invoke federal
jurisdiction."  Id.  In evaluating a factual attack, the court may
consider evidence outside the complaint and resolve factual
disputes, if necessary.  Roberts v. Corrothers, 812 F.2d 1173, 1177
(9th Cir. 1987).  If the substance of a Rule 12(b)(1) motion is
intertwined with the merits of the case, the court employs the
standard applicable to a summary judgment motion.  Autery v. United
States, 424 F.3d 944, 956 (9th Cir. 2005) (internal citation
omitted).  That is, the motion to dismiss should be granted "only
if the material jurisdictional facts are not in dispute and the
moving party is entitled to prevail as a matter of law."

Page 14 - OPINION AND ORDER

Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (citing Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)).

III. Failure to State a Claim

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Moreover, where fraud is alleged, heightened pleading standards apply. See Fed. R. Civ. P. 9(b). The plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Schreiber Distrib. v. Serv-Well Furniture

Co., 806 F.2d 1393, 1401 (9th Cir. 1986) (citation and internal quotations omitted). Likewise, the plaintiff is required to "set forth what is false or misleading about a statement, and why it is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotations omitted). Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotations omitted).

## DISCUSSION

### I.   Motions to Quash Subpoenas

County defendants move to quash five subpoenas issued and served by the Hamptons through their attorney D. Zachary Hostetter on nonparties Frontier Communications and U.S. Cellular. Defs.' Mot. Quash Pls.' Subpoenas Frontier Communications at 2; Defs.' Mot. Quash Pls.' Subpoenas U.S. Cellular at 2. The subpoenas seek telephone records of five phone numbers belonging to Sheriff Steen, Commissioner Castilleja, and nonparty Sheriff Steve Rogers. Decl. Leslie A. Edenhofer Supp. Mot. Quash. Pls.' Subpoenas Frontier Communications, Exs. A-B; Decl. Leslie A. Edenhofer Supp. Mot. Quash Pls.' Subpoenas U.S. Cellular, Exs. A-C. County defendants object to the subpoena requests on the grounds they are irrelevant,

overbroad, and seek protected personal information.[18]  Defs.' Mot.
Quash Pls.' Subpoenas Frontier Communications at 2; Defs.' Mot.
Quash Pls.' Subpoenas U.S. Cellular at 2.

As a preliminary matter, the Court notes the Hamptons' five
subpoenas served on Frontier Communications and U.S. Cellular do
not appear to be signed or dated by Mr. Hostetter.  See Edenhofer
Decl. Supp. Mot. Quash. Pls.' Subpoenas Frontier Communications,
Exs. A-B; Edenhofer Decl. Supp. Mot. Quash Pls.' Subpoenas U.S.
Cellular, Exs. A-C. Fed. R. Civ. P. 45(a)(3) requires an attorney
issuing a subpoena to sign the subpoena. Fed. R. Civ. P. 45(a)(3);
see also Fed. R. Civ. P. 26(g) (every discovery request must be
signed by at least one attorney of record).  Nonetheless, in
addition to this defect, the Hamptons' subpoenas fail for
substantive reasons.

On June 27, 2014, Magistrate Judge Sullivan issued an opinion
and order in this case (doc. 191) quashing nine subpoenas served by
Trackwell on various nonparties, including Mr. Hostetter and
members of Mr. Hostetter's family. Magistrate Judge Sullivan found
all nine subpoenas were facially irrelevant, unduly burdensome, and

---

[18] County defendants also request the Court quash additional
subpoenas served by the Hamptons to Frontier Communications and
U.S. Cellular to the extent they seek telephone records of other
Wallowa County employees and commissioners.  Defs.' Mot. Quash
Pls.' Subpoenas Frontier Communications at 3 n.1; Defs.' Mot.
Quash Pls.' Subpoenas U.S. Cellular at 3 n.1.  Because the County
defendants have not provided copies of those subpoenas, the Court
declines to quash them.

were served to harass and annoy nonparties, and not for the purpose of obtaining information related to this case. Magistrate Judge Sullivan also entered a discovery order prohibiting Trackwell from serving additional subpoenas in this case without Court approval.

For the reasons listed above, the Court quashes the subpoenas served by the Hamptons on Frontier Communications and U.S. Cellular. The Hamptons' subpoenas request production of "[a]ny and all call, toll, and subscriber records and files" for four phone numbers from January 1, 2011 to present, and for one phone number from January 1, 2008 to present. See Edenhofer Decl. Supp. Mot. Quash. Pls.' Subpoenas Frontier Communications, Exs. A–B; Edenhofer Decl. Supp. Mot. Quash Pls.' Subpoenas U.S. Cellular, Exs. A–C. The Hamptons' subpoenas seek a large amount of material, much of which is irrelevant and private, and therefore unduly burdensome. See Mattel, 353 F.3d at 813–14. As such, County defendants' motions to quash the subpoenas are GRANTED.

II.  Motions to Dismiss Pursuant to Rule 12(b)(1)

A.  Article III Standing

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004) (citations and internal quotations omitted). The

Page 18 - OPINION AND ORDER

"irreducible constitutional minimum of standing" requires three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be "fairly traceable to the challenged action of the defendant"; and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (citations and internal quotations omitted).

Trackwell argues the Hamptons fail to meet the three elements of Article III standing because "certain key facts, central to each cause of action are either false or intentionally misrepresented by Plaintiffs." Trackwell Br. Supp. Mot. Dismiss at 4. In support of this argument, Trackwell provides the Court with 38 exhibits, totaling 238 pages, including documents related to the Bruce & Venese Hampton Charitable Trust I and the Bruce & Venese Hampton Charitable Trust II, documents from the Wallowa County Circuit Court cases between the Hamptons and Trackwell, and various other letters and documents. Trackwell Br. Supp. Mot. Dismiss, Exs. 1-38.

An attack on subject matter jurisdiction may be either facial or factual. See Safe Air for Everyone, 373 F.3d at 1039. Trackwell's challenge to standing is a factual attack given he disputes the truth of all the allegations in the Hamptons' TAC. See id. Because the relevant facts are dispositive of both the Rule 12(b)(1) motion and the merits of the Hamptons' claims, the Court applies the standard applicable to a summary judgment motion.

Autery, 424 F.3d at 956 (9th Cir. 2005).  Employing a summary judgment standard, the Court cannot resolve these issues at this stage as all of the facts in the TAC are in dispute.  For these reasons, Trackwell's motion to dismiss based on lack of standing is denied.

    B.   Prudential Standing

    The "prudential component of standing precludes the exercise of [subject-matter jurisdiction] even where the Constitution's 'irreducible minimum' requirements have been met." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108 (9th Cir. 2003); see also Allen v. Wright, 468 U.S. 737, 751 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").  "As a general rule, a third-party does not have standing to bring a claim asserting a violation of someone else's rights." Martin v. Cal. Dep't of Veterans Affairs, 560 F.3d 1042, 1050 (9th Cir. 2009) (citing Powers v. Ohio, 499 U.S. 400, 410 (1991)).  This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." Elk Grove, 542 U.S. at 15 n.7 (citations and internal quotations omitted).

County defendants argue the Hamptons do not have standing to assert their claims in paragraphs 9 through 13 of the TAC on behalf of third parties Marilyn Suarez a/k/a Maryilyn Preston ("Suarez"), Wallowa Title Company, and Donald and Dorothy Hubbard (the "Hubbards").[19]   County Defs.' Mot. Dismiss at 2-3.   County defendants contend the Hamptons lack standing because nowhere in the TAC do they allege a close relationship to any of these third parties or that the third parties are unable to protect their own interests.  Id. at 3.

Contrary to County defendants' argument, paragraphs 9 through 13 of the TAC consists of background facts and not claims for relief.  See TAC ¶¶ 9-13.  In these paragraphs the Hamptons allege Sheriff Steen and nonparty Judith Trackwell filed lawsuits against Suarez and Wallowa Title Company in this Court and Wallowa County Circuit Court.  Id. ¶¶ 9-10.  The Hamptons also assert nonparties Judith Trackwell, Mary Dorrenbach a/k/a Mary Wickenkamp ("Wickenkamp"), and Lloyd Trackwell, Sr., along with defendants Sheriff Steen, WCSO, and Trackwell, associated together for purposes of discrediting, defaming, coercing, and injuring them, along with Suarez, Wallowa Title Company, and the Hubbards.  Id. ¶ 11.  Finally, the Hamptons contend nonparties Judith Trackwell and Wickenkamp, along with defendants Sheriff Steen, WCSO, and

---

[19] Paragraphs 9 through 11 of the TAC are also subject to the County defendants motion to strike.  County Defs. Mot. Strike at 6-8.

Trackwell, filed false reports with various state and federal law enforcement agencies alleging the Hamptons had conspired with Suarez, Wallowa Title Company, and others, to commit various crimes. Id. ¶¶ 12-13.

Although Suarez, Wallowa Title Company, and the Hubbards are mentioned in these paragraphs, the Hamptons do not assert their claims of behalf of these nonparties. See TAC ¶¶ 100-206. Rather these nonparties are discussed as background information. For these reasons, the County defendants' motion to dismiss based on lack of standing is denied.

III. Motions to Dismiss Pursuant to Rule 12(b)(6)

A. 42 U.S.C. § 1983 Claims

The Hamptons assert five claims (Claims 1 through 5) against defendants under 42 U.S.C. § 1983: (1) deprivation of their liberty and property interests, without due process; (2) retaliation; (3) defamation; (4) arbitrary law enforcement; and (5) wrongful initiation and prosecution of civil proceedings. TAC ¶¶ 100-28. To state a claim against an individual under § 1983, the plaintiff must allege: (a) the conduct complained of deprived him of an existing federal constitutional or statutory right; and (b) the conduct was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). Where a plaintiff seeks to impose liability against a

municipality under § 1983, he or she must also prove a policy or custom existed that was the moving force behind the violation at issue.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2011) (citation omitted).

        1.   Due Process (Claim 1)

The Hamptons allege defendants deprived them of their liberty and property interests, without due process, including but not limited to their interests in: (a) actual and prospective business and contractual relationships; (b) pursuing the common occupations or professions of life; (c) future profits from real property sales and other transactions; (d) real property owned by the plaintiffs, including but not limited to their interest in being able to sell such property for its full value; and (e) goodwill.  TAC ¶¶ 100-105.

"To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." United States v. Guillen-Cervantes, 748 F.3d 870, 872 (9th Cir. 2014) (internal citation omitted).  Further, "[a] constitutionally cognizable property interest in a benefit requires more than an abstract need or desire or a unilateral expectation of it—rather, there must be a legitimate claim of entitlement.  This typically requires an individual to demonstrate that an existing law, rule, or

understanding makes the conferral of a benefit mandatory." Id. (internal quotation marks and citations omitted).

Here, the Hamptons fail to allege a constitutionally cognizable liberty or property interest that was violated by defendants. The Hamptons allege generally that defendants deprived them of actual and prospective business and contractual relationships, future profits from real property sales, and goodwill. TAC ¶ 101. In order to have a property interest in a benefit, a person must have "a legitimate claim of entitlement" and not a mere "unilateral expectation." Guillen-Cervantes, 748 F.3d at 872. The Hamptons' conclusory allegation that they lost actual and prospective business relationships, profits, and goodwill from third parties are all unilateral expectations and therefore insufficient to create a property interest.

The Hamptons also allege generally that defendants deprived them of pursuing common occupations or professions. TAC ¶ 101. Pursuing an occupation of one's choice is a liberty interest. See Dittman v. California, 191 F.3d 1020, 1029-30 (9th Cir. 1999). "[A] plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." Engquist v. Or. Dep't of Agric., 478 F.3d 985, 997 (9th Cir. 2007) (internal citation omitted). This right however, involves a complete prohibition of the right to engage in a

calling, not a brief interruption. <u>Dittman</u>, 191 F.3d at 1029. The TAC is void of any information as to the occupation or profession of either Bruce Hampton or Venese Hampton, and neither alleges in the TAC that they are completely prohibited from pursuing their occupation or profession as a result of defendants' conduct. As such, their conclusory allegation is insufficient to create a liberty interest.

Therefore, the Hamptons fail to allege the deprivation of a protected property or liberty interest necessary to state a claim for denial of their substantive or procedural due process rights. As such, Claim 1 is dismissed.

      2.  <u>Retaliation (Claim 2)</u>

The Hamptons allege defendants' conduct "was motivated by a desire to retaliate against [the Hamptons] for their exercise of rights guaranteed by the United States Constitution, including but not limited to the right of access to the courts and the right to petition the government for redress of grievances." TAC ¶¶ 106-111. The Court interprets this as a claim for retaliation in violation of the First Amendment.

To recover under § 1983 for retaliation in violation of the First Amendment, the plaintiff must establish: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the

Page 25 - OPINION AND ORDER

protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010).

The Hamptons do not specify precisely what constitutionally protected activity they engaged in and what defendants did in retaliation. Because the Hamptons assert they exercised their right of access to the courts, presumably their constitutionally protected activity was filing Hampton lawsuit I, Hampton lawsuit II, and the civil stalking case. However, the TAC contains a multitude of allegations against defendants and it is unclear which of these, if any, were taken in retaliation of the Hamptons filing their civil cases.[20]  Because the Hamptons have not alleged facts establishing a causal-link between their prior speech and defendants' subsequent conduct, their retaliation claim fails at the pleading level, and is dismissed. See Handy v. Lane County, 937 F. Supp. 2d 1297, 1305-06 (D. Or. 2013).

   3.   Defamation (Claim 3)

The Hamptons allege the conduct of defendants was defamatory and "committed with the purpose of, and had the effect of, causing the persons and/or entities described above to terminate their

---

[20] Claim 2 merely incorporates paragraphs 1 through 105 of the TAC.  TAC ¶ 106.

existing and/or prospective business and/or contractual relationships with plaintiffs." TAC ¶¶ 112-117.

Defamation by itself does not support a claim under § 1983 because injury to reputation alone is not a liberty or property interest protected by the Due Process Clause. Hart v. Parks, 450 F.3d 1059, 1069-70 (9th Cir. 2006) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976)). To state a claim for defamation under § 1983, a plaintiff must allege injury to reputation in conjunction with loss of a recognizable property or liberty interest. Crowe v. County of San Diego, 593 F.3d 841, 879 (9th Cir. 2010). This is known as the "stigma-plus" test and can be satisfied in two ways: (1) the injury to reputation was inflicted in connection with the deprivation of a federally protected right; or (2) the injury to reputation caused the denial of a federally protected right. Hart, 450 F.3d at 1070 (emphasis in original).

As discussed above for Claim 1, the Hamptons' allegation that defendants deprived them of actual and prospective business and contractual relationships fails to state a cognizable property or liberty interest. Thus, the Hamptons have not shown either an injury to their reputation in connection with the deprivation of a federally protected right or an injury to reputation that caused the denial of a protected right. Hart, 450 F.3d at 1070. As such, Claim 3 is dismissed.

4.    Arbitrary Law Enforcement (Claim 4)

The Hamptons allege defendants' conduct constituted "arbitrary law enforcement activity for the purpose of harassment and interference" and deprived them of their liberty and/or property interests, without due process, including but not limited to: (a) actual and prospective business and contractual relationships; (b) pursuing the common occupations or professions of life; (c) future profits from real property sales and other transactions; (d) real property owned by plaintiffs, including but not limited to their interest in being able to sell such property for its full value; and (e) goodwill.  TAC ¶¶ 118–123.

The Court construes the due process claim in Claim 4 to be the same as the due process claim in Claim 1.[21]  Because the Court dismissed Claim 1, Claim 4 is similarly dismissed.

5.    Wrongful Initiation and Prosecution of Civil Proceedings (Claim 5)

Finally, the Hamptons allege defendants' conduct constituted "wrongful initiation and prosecution of civil proceedings" against them.  TAC ¶¶ 124–128.  Specifically, the Hamptons allege the filing of the ABM lawsuit, Trackwell lawsuit I, and Trackwell lawsuit II, "was motivated by defendants' desire to retaliate against plaintiffs for their exercise of rights guaranteed by the

---

[21] In response to County defendants' Motion, the Hamptons clarify that Claim 4 is a substantive due process claim.  Pls.' Resp. County Defs.' Mot. Dismiss at 18–19.

Page 28 – OPINION AND ORDER

United States Constitution including, but not limited to, plaintiffs' right of access to the courts, their right to petition the government for redress of grievances, and by defendants' desire to defame plaintiffs for the purpose of causing Junior Lewis, Rose Lewis, and The Nature Conservancy to terminate their existing and/or prospective business and/or contractual relationship with plaintiffs." Id.

Malicious prosecution through civil proceedings does not support a § 1983 claim. Paskaly v. Seale, 506 F.2d 1209, 1212 (9th Cir. 1974) (rejecting a § 1983 claim for malicious prosecution in a civil proceeding because "[m]alicious prosecution . . . is a concept applicable only in criminal proceedings."); see also Heil v. Sierra Sands United Sch. Dist., 843 F.2d 501 (9th Cir. 1988) (unpublished). Furthermore, "the tort of malicious prosecution, without more, does not constitute a civil rights violation." Paskaly, 506 F.2d at 1212 (internal citations omitted).

ABM lawsuit, Trackwell lawsuit I, and Trackwell lawsuit II are all civil cases, and therefore cannot support a claim for malicious prosecution. To the extent Claim 5 alleges a due process, retaliation, or defamation claim, those claims have been previously dismissed in Claims 1 through 4. As such, Claim 5 is dismissed.

    6.  Conclusion

The Hamptons have failed at the pleading level to demonstrate that defendants deprived them of an existing federal constitutional

Page 29 - OPINION AND ORDER

or statutory right to support a claim under § 1983.  As a result, the Court need not determine whether defendants were acting under color of law.  Furthermore, the Court declines to address the County defendants' additional arguments for dismissal including statute of limitations and absolute immunity.

B.  RICO Claims

The Hamptons assert two claims (Claims 20 and 21) under RICO, 18 U.S.C. §§ 1961-1968.  TAC ¶¶ 178-82.  Specifically, the Hamptons assert defendants violated 18 U.S.C. §§ 1962(c) & 1962(d)[22] "causing each plaintiff to suffer direct financial losses on and after July 1, 2009, in the sum of $4,805,000.00."  Id. ¶¶ 179, 182.

1.  Section 1962(c) (Claim 20)

To state a RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).  The plaintiff must also establish proximate causation.  Canyon Cnty. v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008); see also Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010) ("Proximate Causation for RICO purposes requires some direct relation between the injury

---

[22] The Hamptons assert defendants violated 18 U.S.C. §§ 1961(c) & 1961(d).  TAC ¶¶ 179, 182.  However, these statutes do not exist.  The Court will assume the Hamptons intended to assert violations of 18 U.S.C. §§ 1962(c) & 1962(d).

asserted and the injurious conducted alleged.") (internal citations omitted). RICO claims that include allegations of fraudulent activities as predicate acts of racketeering must be pled with particularity under Fed. R. Civ. P. 9(b). See Odom, 486 F.3d at 553-54 ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identifies of the parties to the misrepresentation.") (internal citations omitted). The Hamptons' RICO claim under § 1962(c) is defective in many respects.

Significantly, the TAC fails to show the existence of an "enterprise." An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Odom, 486 F.3d at 552 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). At the pleading level, "[t]o establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" Id. (quoting Turkette, 452 U.S. at 583); see also Eclectic Props. East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014).

The TAC alleges in a conclusory fashion that "[t]he associated persons operated as a single enterprise that constituted an 'association-in-fact' enterprise within the meaning of 18 U.S.C. § 1961(4)." TAC ¶ 37. The only facts the Hamptons provide to establish the existence of an associated-in-fact enterprise among the defendants is a vague allegation that Sheriff Steen, Commissioner Castilleja, and Trackwell have raised livestock and sold hay on the "Imnaha Ranch" since 2007. Id. ¶ 35. Aside from this alleged business arrangement, the Hamptons provide no facts regarding a common purpose, an ongoing organization, or a continuing unit. See Odom, 486 F.3d at 552-53. As it relates to the claims in the TAC, the Hamptons merely allege Sheriff Steen, Commissioner Castilleja, and Trackwell, "have regularly met in the office of WCSO, Wallowa County Justice Center, 104 W. Greenwood Street, Enterprise, Oregon, to coordinate their plans in furthering their Enterprise and their conspiracy to discredit, defame, coerce, extort, and injure Venese Hampton and Bruce Hampton."[23] TAC ¶ 41. Such limited facts are insufficient to establish an "enterprise" within the meaning of RICO.

---

[23] The TAC contains several allegations that Judith Trackwell, Wickenkamp, and Lloyd Trackwell Sr. committed acts "in furtherance of the Enterprise." TAC ¶¶ 42-44. However, Judith Trackwell, Wickenkamp, and Lloyd Trackwell Sr. are not parties to the case, these facts are not relevant to the Hamptons' claims, and many of these allegations are subject to the County defendants' motion to strike.

Furthermore, the Hamptons fail to allege a pattern of racketeering activity. A pattern "must be based on at least two acts of racketeering, must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Cooper Indus., Inc. v. Lagrand Tire Chains, 205 F. Supp. 2d 1157, 1165 (D. Or. 2002) (internal citations omitted). For the RICO claims, the TAC lists nine predicate acts by Trackwell of mail fraud, wire fraud, and obstruction of justice. TAC ¶¶ 78-91. However it is unclear how these acts are related, other than the bare allegation that each predicate act was committed by Trackwell "in furtherance of the Enterprise." See id. "The relationship requirement is satisfied by a showing that the racketeering predicates have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Cooper, 205 F. Supp. 2d at 1165 (internal citations and quotation marks omitted). Here, the Hamptons fail to allege any form of relationship.

Similarly, the Hamptons do not contend there is any continuing threat of criminal activity; the TAC merely alleges Trackwell committed acts of mail fraud, wire fraud, and obstruction of justice. TAC ¶¶ 78-91. "The continuity element is satisfied by a showing that the predicate acts pose a threat of continued criminal activity, such as when the illegal conduct is a regular way of

Page 33 - OPINION AND ORDER

conducting a defendant's ongoing legitimate business." <u>Cooper</u>, 205 F. Supp. 2d at 1165 (internal citations and quotation marks omitted). While the TAC vaguely alleges Sheriff Steen, Commissioner Castilleja, and Trackwell have engaged in a livestock and hay business, the Hamptons do not allege the illegal conduct is a regular way of conducting the business.

Finally, the Hamptons assert their § 1962(c) claim against "defendants." TAC ¶ 178-180. However, the TAC alleges predicate acts by Trackwell only. TAC ¶¶ 78-91. The Hamptons provide no predicate acts or facts alleging fraudulent actions by Sheriff Steen, Commissioner Castilleja, WCSO, or Wallowa County. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud." <u>Swartz</u>, 476 F.3d at 764-65 (citation and internal quotations omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the fraudulent scheme." <u>Id.</u> (citation and internal quotations omitted). Thus, the Hamptons' RICO claim also fails to allege the particularly required by Fed. R. Civ. P. 9(b). For all these reasons, Claim 20 is dismissed.

2.    Section 1962(d) (Claim 21)

Section 1962(d) prohibits the act of conspiring to violate §§ 1962(a)-(c). Although a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand. Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000) (internal citation omitted); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.8 (9th Cir. 1992). As described above, the Hamptons have failed to state a substantive RICO claim under § 1962(c). As a result, Claim 21 is also dismissed.

C.    FDCPA (Claim 29)

The Hamptons assert one claim under the FDCPA against Trackwell, alleging he violated 15 U.S.C. §§ 1692c, 1692e, and 1692g. TAC ¶¶ 14-15, 202-205.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Thus, to be liable under the FDCPA, a defendant must, as a threshold requirement, fall within the statutory definition of "debt collector." See Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1203 (D. Or. 2002); see also Romine v. Diversified Collection Servs., 155 F.3d 1142, 1146 (9th Cir. 1998). The FDCPA defines "debt collector" as "any person . . . in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Based on the limited facts provided in the TAC, the Court cannot conclude Trackwell is a debt collector within the meaning of the FDCPA. The TAC states in a conclusory fashion that in August 2007, Trackwell sought and procured an agreement to serve as an agent for ABM to collect a debt allegedly owed by the Hamptons to ABM, whereby Trackwell would receive 45% of any money collected. TAC ¶ 14. Such an arrangement does not appear to make Trackwell a person in a business whose principal purpose is to collect debts, or a person who regularly collects or attempts to collect debts. The TAC alleges Trackwell conducted these collection attempts without registering as a debt collector with the ODCBS, as required by Or. Rev. Stat. § 697.015. Id. ¶ 16. Therefore, the Court finds the Hamptons have failed to plead sufficient facts to establish Trackwell is a "debt collector" within the meaning of the FDCPA.

Furthermore, the statute of limitations for a claim under the FDCPA is one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). The Hamptons filed this action on March 15, 2012 (doc. 1) making any violations of the FDCPA by Trackwell prior to March 15, 2011, barred by the statute of limitations. The TAC states all violations of the FDCPA by Trackwell occurred "on or

Page 36 - OPINION AND ORDER

between September 1, 2008 and the present in the state of Oregon."
TAC ¶ 15.  Thus, much of the misconduct by Trackwell is likely
barred by the statute of limitations, but the Hamptons have failed
to plead sufficient facts regarding when precisely these violations
occurred.  Regardless, the Hamptons have failed at the pleading
level to establish a claim under the FDCPA and therefore, Claim 29
is dismissed.

    D.   <u>State Law Claims</u>

In addition to the federal claims, the TAC alleges nineteen
state law claims against defendants under ORICO (Claim 22), the
OUDCPA (Claim 28), and common law torts (Claims 6 through 19 and
Claims 25 through 27).[24]

Dismissal of the Hamptons' federal claims does not
automatically deprive a district court of subject-matter
jurisdiction over any supplemental state law claims.  <u>Carlsbad
Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009).  Rather,
where a district court dismisses "all claims over which it has
original jurisdiction," it may in its discretion, "decline to
exercise supplemental jurisdiction" over pendent state law claims.
28 U.S.C. § 1367(c)(3); <u>see also</u> <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d
896, 940 (9th Cir. 2012).  Therefore, this Court declines to
exercise supplemental jurisdiction over the Hamptons' state law
claims.

_____

[24] The TAC does not contain a Claim 23 or Claim 24.

Page 37 - OPINION AND ORDER

IV.    Remaining Motions

In addition to arguing that the Hamptons have failed to state a claim, Trackwell argues the Hamptons have failed to join required parties under Fed. R. Civ. P. 12(b)(7).  Trackwell Br. Supp. Mot. Dismiss at 22.  Because the Court has determined the Hamptons have failed to state a claim, the Court declines to address Trackwell's arguments regarding required parties.  Furthermore, County defendants and Trackwell separately move to strike portions of the TAC (docs. 155 & 206).  Because the Court has found the Hamptons' TAC fails to state a claim, the motions to strike are moot.

## CONCLUSION

For the reasons set forth above, County defendants' motions to quash subpoenas (docs. 193 & 195) are GRANTED.  Defendants' motions to dismiss (docs. 157, 211 & 215) are GRANTED.  Defendants' motions to strike (docs. 155 & 206) are DENIED as moot.  The parties' requests for oral argument are DENIED as unnecessary.  All other pending motions are DENIED as moot and this case is DISMISSED.

IT IS SO ORDERED

Dated this 28th day of October 2014.

_____
Ann Aiken
United States District Judge